## Richmond

## WALTER STEVE OWENS v. COMMONWEALTH OF VIRGINIA.

June 10, 1977.

Record No. 761185.

Present: All the Justices.

*Malcolm G. Crawford (Spencer & Crawford,* on brief), for plaintiff in error..

*Jim L. Chin, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the Court.

The defendant, Walter Steve Owens, was convicted by the trial court, sitting without a jury, of attempted breaking and entering in the nighttime with intent to commit larceny. He was sentenced to serve three years in the penitentiary, but, upon recommendation of the Commonwealth's Attorney and of the investigating officer, the sentence was suspended for three years, and Owens was placed on probation, subject to specified conditions, for that period. On appeal Owens contends that the trial court erred in admitting into evidence against him an incriminating statement taken from him in violation of his Fifth Amendment privilege against self-incrimination as delineated in *Miranda* v. *Arizona,* 384 U.S. 436 (1966). He further contends that this allegedly inadmissible evidence tainted and rendered inadmissible a confession which he subsequently gave after receiving the *Miranda* warnings.

On February 20, 1976, Lt. F. M. Spence, of the Rockbridge County Sheriff's Department, investigated a reported attempt to break and enter the United States Post Office in Goshen. Arriving on the scene at 8:15 a.m., he interviewed the postmaster, observed the evidence that a recent attempt had been made to break and enter the building through the rear door, and talked to an unidentified person who had seen Owens on the preceding night enter the alley behind the post office. Spence, having known Owens and his family for several years, was aware of his personal problems and the fact that he was unemployed and separated from his wife. Although the officer "had a feeling" that Owens had committed the crime, and there were no other suspects, Spence testified that he did not have enough evidence to arrest Owens. The officer proceeded to Owens's home, and, when Owens came out of the house, Spence, without arresting him, asked the suspect to accompany him to the sheriff's office in Lexington. Spence testified as follows:

"In the car, he asked me what did I want with him and I told him he knew what he had done the previous night and he said he did not know what I was talking about and I told him, that it took a man to tell the truth, that anybody could lie, and at that point he said, 'I done it.' "

Counsel for Owens interposed an objection, and, without assigning reasons, moved that the foregoing testimony be stricken, which motion was overruled by the trial court.

Spence testified that as the trip to the sheriff's office continued he and Owens conversed only about Owens's personal problems; they stopped on the way for a soda; and upon arrival at the sheriff's office Spence gave Owens the standard *Miranda* warnings, which Owens said he understood. Over objection on unspecified grounds, Spence then read a statement signed by Owens on February 20, 1976, confessing that he had attempted unsuccessfully the preceding night to break into the Goshen post office to steal money.

On cross-examination Spence stated that if Owens had objected to going with him to the sheriff's office, he would not have arrested the suspect, but he knew that Owens would not object. He conceded that he did not give Owens any *Miranda* warnings in the police car and did not tell him, before taking the statement in the sheriff's office, that his earlier admission could not be used against him. Spence estimated that an hour or an hour and a quarter elapsed between Owens's oral admission and the taking of his signed confession.

In answer to questions propounded by the trial court Spence testified that Owens voluntarily accompanied him to Lexington; that he suspected Owens of having committed the crime, but that the crucial conversation he had with Owens in the car was not a part of the investigation; and that he made his statement to Owens because the defendant "wanted to know where we were going and the reason."

After the Commonwealth's evidence had been presented the defendant's counsel moved to suppress both incriminating statements given by Owens on the grounds that no warning was given before the first admission was made and that the second statement was inadmissible as the tainted product of the first. In support of the motion Owens testified solely as to the circumstances under which he gave the statements. He insisted

that he felt that he had no choice when Spence asked him "to go for a ride," and he also maintained that Spence questioned him about the break-in and urged him to tell the truth about it, until he finally admitted it. He testified that, although Spence did not threaten him or promise leniency, the officer repeatedly said that he knew that Owens had committed the crime. When his *Miranda* warnings were given to him in the sheriff's office, Owens understood that he could have a lawyer, but by that time he "had already told him [Spence] in the car" that he was guilty.

In the ensuing colloquy between the trial judge and counsel it appears that the court found that Owens's oral admission of guilt was an unsolicited "voluntary response" to the officer's "statement that it takes a man to tell the truth," was not taken in violation of his constitutional rights, and was therefore admissible. The court further found that Owens accompanied Spence in the police car "as a friend" and that Spence "looked upon the Defendant in a friendly manner also." Accordingly, the motion to strike Spence's testimony (motion to suppress) was overruled.

■ If the admission made by Owens in the police car, before *Miranda* warnings were given to him, was the result of custodial interrogation then it was inadmissible in evidence under the *Miranda* rule. 384 U.S. at 444. Custodial interrogation was therein defined as follows:

> "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444.

■ We will assume, without deciding and in spite of the trial court's apparent finding to the contrary, that Owens, while not under arrest, nevertheless was deprived of his freedom of action in a significant way when, at the officer's request, he entered Spence's police car to go to the sheriff's office. *See* annot., 31 A.L.R.3d 565, 625-27. *But see Oregon* v. *Mathiason*, 429 U.S. 492 (1977), where the suspect was expressly informed when he voluntarily came to the police office for questioning that he was not under arrest and that he could leave at any time. The question remains whether the oral admission by Owens resulted from interrogation initiated by the officer.

Viewing, as we must, the evidence in the light most favorable to the Commonwealth, in the crucial dialogue Spence did not question Owens, but merely replied to a question asked by Owens. According to Spence's testimony, given in answer to the court's inquiry, he did not pursue his investigation of the crime during the trip from Goshen to Lexington. As stated in *Miranda, supra,* 384 U.S. at 478, "The fundamental import of the [Fifth Amendment] privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated."

It is true that a law enforcement officer may, without asking questions of a suspect who is under custodial restraint, make statements which are tantamount to interrogation. *Brewer* v. *Williams,* 430 U.S. 387 (1977). *Williams,* however, is distinguishable from the present case.

In *Williams,* a federal habeas corpus proceeding, the suspect, who had recently escaped from a mental hospital, was arrested, arraigned, and incarcerated in Davenport, Iowa, on a murder charge arising in Des Moines. He had an attorney in each city. Des Moines police officers arrived in Davenport the day after Christmas to transport Williams back to Des Moines, a distance of approximately 160 miles. They agreed not to question him until he saw his Des Moines attorney; they were told by both attorneys that the suspect was not to be questioned; they refused to permit his Davenport attorney to ride with him to Des Moines; and they were informed by Williams that he would talk to them after he saw his attorney in Des Moines. Nevertheless, a detective admitted that he sought to elicit incriminating information from Williams as to the location of the infant victim's body before the suspect arrived in Des Moines and conferred with his local attorney. The officer acknowledged that this was his purpose when, at the beginning of the automobile ride to Des Moines, he urged Williams, whom he knew to be deeply religious, to think about the threatening weather and the probability that anticipated snow would make it difficult to find the body, and he suggested that they could stop and locate the body so that the parents of the victim could give her a Christian burial. When Williams then asked him why he thought their route would take them near the body the detective falsely asserted that he knew the body was in the area of Mitchellville, a town they would be passing on the way to Des Moines. He

admonished Williams not to answer but to think about his remarks as they traveled along the highway. Subsequently, Williams asked several incriminating questions, and, as the car approached Mitchellville, he directed the officers to the place where the murdered child's body was found.

Counsel for the State acknowledged in oral argument that the detective's efforts were a skillful and effective form of interrogation, as the United States District Court had found. Indeed, the opinion of the United States Supreme Court, referring to the detective's exhortation, described in briefs and arguments as the "Christian burial speech," stated that the Iowa state courts had proceeded upon the hypothesis that these remarks were tantamount to interrogation.

The dispositive question in *Williams* was whether during the automobile ride the suspect had made a valid waiver of his right to counsel. On direct appeal of his conviction, the Iowa Supreme Court had agreed with the trial court that Williams had waived this right. *State* v. *Williams*, 182 N.W.2d 396, 402 (Iowa 1970, *reh. den.* 1971). A majority of the United States Supreme Court, however, agreed with the District Court and the Court of Appeals for the Eighth Circuit that the State had failed to carry its burden of showing a valid waiver and held that the incriminating statements and actions of Williams should have been excluded.[1] The Court therefore affirmed the judgment of the Court of Appeals ordering the issuance of a writ of habeas corpus but suspended the issuance of the writ for 60 days to allow the State of Iowa an opportunity to initiate a new trial.

In the present case, unlike the uncontradicted evidence in *Williams*, there was credible evidence that the investigating officer did not initiate the conversation with Owens and that Spence had no intention of attempting to elicit a confession on the automobile trip. The trial court could reasonably infer that Spence was not trying to persuade Owens to make a self-incriminatory statement before formal questioning would be conducted in the sheriff's office, but that the officer, as a friend, was merely offering advice for Owens's guidance in

---

[1]*But cf. Stone* v. *Powell,* 428 U.S. 465 (1976), which held that a federal court need not apply the exclusionary rule on habeas corpus review of a Fourth Amendment claim absent a showing that the state prisoner was denied an opportunity for a full and fair litigation of that claim at trial and on direct review.

conducting himself under interrogation. Certainly, there is a great difference between answering a question by extolling as a manly virtue the telling of the truth, as Spence did, and deliberately and intentionally applying psychological pressure to induce an incriminating revelation, as the detective admittedly did in *Williams.*

A factual finding by the court, if supported by credible evidence, has the same weight as a finding of fact by a jury, and will not be disturbed by us on appeal. *Akers* v. *Commonwealth,* 216 Va. 40, 46, 216 S.E.2d 28, 32 (1976). We hold that there was credible evidence to support the trial court's finding that the first admission by Owens was not the product of interrogation, but was an unsolicited statement. Under such a finding, there is no reversible error in the ruling of the trial court that antecedent *Miranda* warnings were not prerequisite to the admissibility of the statement.

Under our view of the case, as the oral confession was admissible in evidence, the subsequent written confession, given by Owens after he had received *Miranda* warnings, was not tainted and was also admissible. Accordingly, we will affirm the judgment of the trial court.

*Affirmed.*