## Richmond

# WILLIAM HOWARD ADKINS, JR. v. COMMONWEALTH OF VIRGINIA

April 21, 1978.

Record No. 770876.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*Charles W. Peraino* for plaintiff in error.

*Vera S. Warthen, Assistant Attorney General (Anthony F. Troy, Attorney General,* on brief) for defendant in error.

I'ANSON, C.J., delivered the opinion of the Court.

The defendant, William Howard Adkins, Jr., was convicted by the trial court, sitting without a jury, of burglary [1] and his punishment was fixed at six years in the state penitentiary.

The defendant contends that the trial court erred in failing to suppress the evidence seized from the defendant's automobile and in admitting into evidence the statements made by him to the police officers.

The evidence shows that at noon on December 10, 1976, Detective J. Wheelhouse and three other vice squad officers of the Richmond Police Department were conducting a narcotics investigation at the intersection of St. John and Federal Streets. While there they observed an automobile moving southbound on St. John Street, heading toward them. The car stopped about a third of a block from the intersection, and Wheelhouse noticed the occupants of the front seat "moving around quite a bit." "Five or six seconds" later, the car started off slowly and then increased its speed. One of the detectives with Wheelhouse stepped out in the street and stopped the car. Wheelhouse approached the driver and asked him for his identification. A strong odor of burnt marijuana was emanating from the vehicle, and a search was then made of the car for marijuana, but none was found. Wheelhouse and the other vice squad officers, however, saw in the back seat of the automobile a "Lloyd's" stereo set and a television set.

Defendant was questioned relative to the ownership of the items, and he stated that the items were the property of his

---

[1] Code § 18.2-89, as amended.

sister. He then changed his story and said the items were his uncle's. Finally, the defendant said that he did not know to whom they belonged.

Detective Wheelhouse explicitly testified that he did not place the defendant under arrest; that defendant was under no restraint in any way from leaving the scene; and that neither he nor the other three vice squad detectives seized the items. He said that after receiving so many conflicting statements from the defendant as to the ownership of the property, he radioed Detectives Houchins and Lightfoot, whose duties were to investigate breaking and entering offenses, and requested that they come to the scene.

When Detectives Houchins and Lightfoot arrived, Wheelhouse advised them of the conflicting statements made by the defendant relating to the ownership of the items. Wheelhouse and the other vice squad officers then left the scene.

Houchins testified that prior to receiving the call from Wheelhouse, he had received a report that a building on 4th Avenue had been broken into and entered and a "Lloyd's" stereo set had been taken therefrom. Upon questioning defendant concerning the ownership of the items, he said defendant told him that the items were the property of his sister. Houchins stated he immediately dispatched an officer to the residence of the defendant's sister to talk with her, but she was not at home. Defendant's father, who was at the residence, stated, however, that the items did not belong to defendant's sister. Houchins then seized the items, gave the defendant a receipt, and took them to police headquarters. Defendant then left the scene. Houchins stated that the defendant was free to leave the scene at any time before and during the time he was questioning him.

After checking with the occupant of the 4th Avenue building and other police reports of break-ins, Houchins found that the "Lloyd's" stereo set taken from defendant's automobile was not the one stolen from the 4th Avenue address; however, he concluded it may have come from the home of Shirley Watters, 4023 North Avenue. The following day, defendant was arrested on a warrant charging him with breaking and entering the North Avenue residence and stealing a "Lloyd's" stereo set. Defendant was then questioned by the police, after having been given his *Miranda* warnings, and he stated that he had bought

the items seized from a man called "Smoke." The next day, defendant told the police that he won the items in a "crap" game.

■ Defendant argues that even though the items seized from the back seat of his automobile without a warrant were in plain view, they were inadmissible in evidence because there was no probable cause for the officers to believe that the items were contraband or the fruits of a crime. We do not agree.

"Probable cause, as the very name implies, deals with probabilities. These are not technical; they are the factual and practical considerations in everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Schaum* v. *Commonwealth*, 215 Va. 498, 500, 211 S.E.2d 73, 75 (1975).

In the present case the evidence shows that items were not seized by Wheelhouse or the other members of the vice squad. The seizure was made by Houchins. Before seizing the items, Houchins knew the defendant had told Wheelhouse several conflicting stories concerning their ownership. Houchins had also been told by the defendant that the items were his sister's. Upon checking the verity of the defendant's statement, Houchins found from a conversation with defendant's father that the sister did not own the items. Prior to answering Detective Wheelhouse's request that he come to the St. John's Street location, Houchins had received a report that a residence on 4th Avenue had been broken into and a "Lloyd's" stereo set had been stolen. Even though it later developed that the "Lloyd's" stereo set seized from the defendant was not the one taken from the 4th Avenue building, Houchins had probable cause to believe from the information he had received that the items, at the time he seized them, were fruits of a crime that had been committed.

■ Defendant argues that his statements made to the police concerning how he obtained the items should have been excluded because the *Miranda* warnings were not given before he was questioned by the officers. We do not agree.

It is true that at the time the statements were made by the defendant to Wheelhouse and Houchins, the defendant had not

been given the *Miranda* warnings. But *Miranda* v. *Arizona*, 384 U.S. 436 (1966), applies to "custodial interrogation." Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444; *Owens* v. *Commonwealth*, 218 Va. 69, 72, 235 S.E.2d 331, 333 (1977); *Jordan* v. *Commonwealth*, 216 Va. 768, 772, 222 S.E.2d 573, 576-77 (1976).

The evidence here was not rendered inadmissible for failure to give the *Miranda* warnings. The questioning of the defendant was conducted during an "investigatory" stage. The evidence shows that defendant was not under arrest at the time; nor was he in custody. He was free to leave the scene when the questioning began, and he was not deprived of his freedom of action in any significant way. In fact, he left the scene without restraint after the questioning was completed and the articles were seized.

The fact that the defendant's questioning by the police concerning the ownership of the items may have caused him to feel that he was deprived of his right to leave the scene does not require the *Miranda* warnings to be given.

"Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question." *Oregon* v. *Mathiason*, 429 U.S. 492, 495 (1977).

For the reasons stated, the judgment is

*Affirmed.*