## Richmond

JAMES LARRY BEAMON

V.

COMMONWEALTH OF VIRGINIA

December 4, 1981.

Record No. 802001.

Present: All the Justices.

*Boyd M. Sears, Jr.,* for appellant.
*Linwood T. Wells, Jr., Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

PER CURIAM.

James Larry Beamon, a prisoner in the New Kent Correctional Unit, was convicted in a jury trial of possession of cocaine and sentenced to serve two additional years in the State penal system. His appeal raises the question whether his inculpatory statements made to a guard when Beamon had not been given *Miranda* warnings were properly admitted as evidence against him at trial.

On March 22, 1980, shortly after visitation hours had ended at the Correctional Unit, Sergeant Donald Thrift saw Beamon approach another inmate and converse with him. Beamon then came to Thrift's office and requested permission to leave the prison compound to light the heaters in the guard towers, one of Beamon's usual chores. Thrift refused the request. Several minutes later Beamon asked Thrift if he could go outside the compound to

check the prison vans for cleanliness. Thrift refused this request, but told Beamon that he could light the guard-tower heaters.

His suspicions aroused by Beamon's requests to leave the compound to perform jobs that he ordinarily had to be ordered to do, Thrift directed Officers Balderson and Leavell to observe the prisoner's movements. Balderson watched Beamon go outside the gate, enter and leave a tower, look inside a prison van, and then disappear behind a tool shed. When Beamon returned from the tool shed area, Balderson saw him walk back to the compound fence and throw something over it. Balderson reported this incident by radio to Thrift and proceeded to the approximate area where he estimated the object had landed.

Thrift and Leavell went out the compound gate and approached Beamon. Thrift asked Beamon what he had thrown over the fence. After the question had been repeated, Beamon said, "Oh, okay; come here and I'll show you." He then pointed through the fence to a small gray canister lying on the ground about three feet inside the fence and said that this was what he had thrown. Later analysis revealed that the canister contained cocaine.

Since the officers did not advise Beamon of his *Miranda* rights, Beamon contends that the admission into evidence of his response to the officer's question violated his Fifth Amendment right against self-incrimination. Beamon says that *Mathis* v. *United States*, 391 U.S. 1 (1968), extended the requirement of *Miranda* warnings to a prisoner interrogated for an offense while in prison for another offense.

In *Mathis,* an Internal Revenue Service agent interviewed a prisoner in the course of a routine civil investigation of his tax returns. On the basis of information acquired by the agent in the interview, a criminal investigation was commenced eight days later, eventually resulting in Mathis's fraud conviction. 391 U.S. at 6. The Supreme Court reversed the conviction because the agent did not give Mathis *Miranda* warnings before questioning him.

In the instant case, an officer saw Beamon throw something over the compound fence. Prison guards are charged with maintaining good order and safety within the prison, a responsibility that includes the urgent necessity of preventing, so far as possible, the introduction into the prison of drugs and weapons. While Beamon was engaged in the very criminal activity for which he was convicted, the officers approached him to discover exactly what

was happening. Beamon would have us mechanically apply *Mathis* under these crucially different circumstances, solely because of the single common fact that he and Mathis were prisoners. We decline to do so.

Prisoners do not have greater Fifth Amendment rights than other persons. Being a prisoner, of course, Beamon was already in custody at the time he was questioned, but his limited freedom of action was not altered or further restricted. When confronted by the officers properly investigating his suspicious conduct, Beamon could have refused cooperation, but he reacted to the inquiry by admitting the inculpatory conduct while denying knowledge of its import. Beamon's defense from the moment the officers approached him to the time of his conviction was that he picked up the canister for another inmate and that he did not know it contained cocaine. At trial, Beamon testified that he thought the canister contained money for the other prisoner.

We have approved police questioning without *Miranda* warnings of those present on the scene of a recent or ongoing crime where police were attempting to discover what had just happened, *Jordan* v. *Commonwealth,* 216 Va. 768, 222 S.E.2d 573 (1976), or what was in progress, *Adkins* v. *Commonwealth,* 218 Va. 945, 243 S.E.2d 205 (1978). These decisions are in accord with the assumption underlying *Miranda* that the specified warnings are "not intended to hamper the traditional function of police officers in investigating crime" and that *Miranda* does not affect "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process." *Miranda* v. *Arizona,* 384 U.S. 436, 477 (1966).

In *Cervantes* v. *Walker,* 589 F.2d 424 (9th Cir. 1978), the court applied the "on-the-scene" rule in a prison context, notwithstanding *Mathis.* In *Cervantes,* a prison guard found what he suspected was marijuana during a routine administrative search of a prisoner's clothing. The guard confronted the prisoner in the prison library with what he had found and asked, "What's this?" The prisoner replied, "That's grass, man." 589 F.2d at 427. The court approved admission into evidence of this exchange, concluding that *Mathis* did not establish a per se rule eliminating investigative on-the-scene questioning merely by virtue of the interviewee's prisoner status. *Id. See also People* v. *Sanchez,* 65 Cal.2d 814, 423 P.2d 800 (1967), a pre-*Miranda* case, *cert. denied,* 394 U.S. 1025 (1969), *rev'd on other grounds,* 451 P.2d 74 (1969);

and State v. *Persinger,* 72 Wash.2d 561, 433 P.2d 867 (1967), *cert. denied,* 393 U.S. 864 (1968); *but cf. Whitfield* v. *State,* 411 A.2d 415 (Md. 1980) (held custodial interrogation when a prisoner suspected of possessing a firearm was removed for intensive questioning first to the isolation wing of the prison and later to the prison office).

Neither *Miranda* nor *Mathis* compels a distortion of the exclusionary rule that could seriously impair the ability of prison guards to maintain and preserve the internal security of prisons. We hold that the correctional officers were not required to give *Miranda* warnings to Beamon before asking him, during their on-the-scene investigation of his suspicious conduct, what he had thrown over the fence.* Accordingly, the trial court did not err in admitting into evidence Beamon's inculpatory statements made at the scene of his offense. We will affirm the judgment of the trial court.

*Affirmed.*

---

\* We have also held today that evidence seized in a random, warrantless search of a prisoner's locker is admissible against him. *Marrero* v. *Commonwealth,* 222 Va. 754, 284 S.E.2d 809 (1981).