**Richmond**

RAY MICHAEL MARRERO

V.

COMMONWEALTH OF VIRGINIA

Record No. 810299.

December 4, 1981.

Present: All the Justices.

*John A. Gibney, Jr. (Bell, Lacy & Baliles,* on brief), for appellant.

*James E. Kulp, Deputy Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

The trial court convicted Ray Michael Marrero of possession of marijuana while defendant was an inmate in the Virginia Penal System and sentenced him to imprisonment for one year. On appeal, Marrero argues that the trial court erred in failing to suppress the evidence. He alleges the drug was seized in a constitutionally impermissible search of his prison locker.

The facts are not in dispute. Marrero was an inmate at the Pocahontas Correctional Center, a unit of Virginia's Department of Corrections. On April 28, 1980, Officer Kenneth A. Dzuba, pursuant to orders by a superior officer, conducted a search of defendant's dormitory locker.[1] Dzuba's search produced a total of twenty-five marijuana cigarettes and a small chrome pipe containing marijuana residue. These items formed the evidentiary basis for the conviction under review.[2]

There was no testimony that prison officials suspected Marrero had marijuana in his locker, or that they considered him a "troublemaker" or a security risk. The only explanation for the search was that Officer Dzuba's superior, an assistant shift leader, had ordered it.

The defendant argues that the Federal and State Constitutions protect a prisoner's reasonable expectation of privacy. He contends that his locker was private, that a lock protected it from intrusions, and that it served as his "one secure, private place in

---

[1] Inmates in this institution are housed in dormitories, not cells. Marrero removed a lock on the locker, thus allowing Dzuba access to the locker's interior.

[2] A second, larger pipe containing marijuana residue was found under Marrero's bed. However, the trial court did not rely on this evidence to convict him because it was found in an area to which others had access.

the entire institution." Because it was private, he argues, the locker was protected against unreasonable searches.

Marrero concedes that, in a prison setting, reasonableness does not require a warrant or probable cause, but he contends the reasonableness standard does require prison authorities to show a legitimate, articulable need for the search. He maintains that whether a search occurs pursuant to a general policy, or because of circumstances peculiar to an individual inmate, the Fourth Amendment to the Constitution requires prison officials to reach an informed judgment of the actual need for the search.[3] According to Marrero, the absence of justification for the search of his locker rendered the search unreasonable and the evidence obtained therefrom inadmissible.

The Commonwealth contends that a prison cannot be equated with a person's home for Fourth Amendment purposes and quotes from *Lanza* v. *New York,* 370 U.S. 139, 143 (1962), as follows: "In prison, official surveillance has traditionally been the order of the day." It argues that the instant search was both permissible and reasonable because it furthered legitimate security interests.

The leading case involving prisoners' Fourth Amendment rights is *Bell* v. *Wolfish,* 441 U.S. 520 (1979). There, inmates of a short-term custodial facility, designed primarily to house pre-trial detainees, challenged as unconstitutional certain conditions and practices utilized at the facility. The Court, in addressing the inmates' claims, noted that while convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement, these rights are subject to restrictions and limitations. Pointing to the need for security and safety, the Court said: "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." 441 U.S. at 547.

Focusing on the alleged violations of the inmates' Fourth Amendment rights, the Court stated:

It may well be argued that a person confined in a detention facility has no reasonable expectation of privacy with respect

---

[3] Cases Marrero contends support this position include *Brown* v. *Hilton,* 492 F.Supp. 771 (D.N.J. 1980); *Hodges* v. *Klein,* 412 F.Supp. 896 (D.N.J. 1976); *United States* v. *Lewis,* 400 F.Supp. 1046 (S.D.N.Y. 1975); *Penn El* v. *Riddle,* 399 F.Supp. 1059 (E.D. Va. 1975).

to his room or cell and that therefore the Fourth Amendment provides no protection for such a person. *Cf. Lanza* v. *New York*, 370 U.S. 139, 143-144 (1962). In any case, given the realities of institutional confinement, any reasonable expectation of privacy that a detainee retained necessarily would be of a diminished scope. *Id.,* at 143.

441 U.S. at 556-57. The Court went on to assume arguendo that a detainee retained such a diminished expectation of privacy and held that room searches by facility officials did not violate the Fourth Amendment. While the Court did not explicitly hold that prisoners forfeit their Fourth Amendment rights, it recognized that these rights are basically inconsistent with the close and constant monitoring of inmates necessary to preserve an institution's security.

█ Possession of drugs and weapons by inmates is a problem facing prison officials everywhere. Prisons are not absolutely secure. No one method of searching can eliminate the possession of contraband by prisoners and the serious security danger it presents. Clearly, the manner and time such searches are undertaken must be left to the discretion of prison authorities. *See Beamon* v. *Commonwealth,* 222 Va. 707, 284 S.E.2d 591 (1981).

█ For one to advocate that prison searches must be conducted only pursuant to an enunciated general policy or when suspicion is directed at a particular inmate is to ignore the realities of prison operation. Random searches of inmates, individually or collectively, and their cells and lockers are valid and necessary to ensure the security of the institution and the safety of inmates and all others within its boundaries. This type of search allows prison officers flexibility and prevents inmates from anticipating, and thereby thwarting, a search for contraband. Such searches may be conducted by prison authorities without notice, and in the absence of probable cause or specific information that contraband is present. Marrero's locker afforded him a right of privacy in relation to other inmates, but not as to prison security officers.

We find no evidence that the search in the case under review did not serve a security purpose, was unreasonable or unnecessary, or that the prison officials have abused their discretion. The trial court properly admitted in evidence the items seized from defendant's locker, and its judgment convicting the defendant is

*Affirmed.*