COMMONWEALTH *vs.* TIMOTHY McCOLLINS.

Suffolk.  December 10, 1986. — January 27, 1987.

Present: GRANT, BROWN, & KASS, JJ.

*Search and Seizure,* Incarceration, Expectation of privacy. *Constitutional Law,* Search and seizure. *Imprisonment.*

A prison inmate had no legitimate expectation of privacy in a locker located at the foot of his bed in a prison dormitory; and hence a correctional officer's seizure of marihuana discovered in the course of a random shakedown search of two dormitories, pursuant to institutional guidelines set out in a handbook issued to each prisoner upon entering the institution, did not constitute a "search" within the meaning of art. 14 of the Massachusetts Declaration of Rights; nor was any search which might have occurred unreasonable under art. 14. [438-439]

COMPLAINT received and sworn to in the East Boston Division of the District Court Department on July 25, 1985.

In the jury session of the Boston Municipal Court Department, a pretrial motion to suppress evidence was heard by *John A. Pino,* J., and the case was heard by *Herbert H. Hershfang,* J.

*Randolph Gioia* for the defendant.

*Kevin J. Ross,* Assistant District Attorney, for the Commonwealth.

*John W. Bishop, Jr.,* Special Assistant Attorney General, & *Maryanne Conway,* for Department of Correction, amicus curiae, submitted a brief.

*Michael J. Traft,* for Massachusetts Sheriffs Association, amicus curiae, submitted a brief.

GRANT, J. The defendant has appealed from his conviction of unlawful possession of marihuana after trial by a judge sitting without jury in the jury-of-six session of the Boston Municipal Court. The marihuana was discovered by a correctional officer in the course of a random shakedown search of

two dormitories at the Suffolk County (Deer Island) house of correction, where the defendant was a prisoner. The only question which has been argued before us is whether it was error to deny the defendant's pretrial motion to suppress the marihuana. The following is a summary of the relevant facts found by the motion judge, supplemented in some respects by the uncontradicted evidence at the suppression hearing.

At approximately 9:00 A.M. on July 22, 1985, the watch commander on duty at Deer Island ordered a routine shakedown search of two dormitories, including the one in which the defendant was housed. That dormitory was a thirty-five-bed facility in which each prisoner had been assigned a bed and foot locker which were the property of the county. Each prisoner was searched, as were his bed and foot locker. The defendant's locker was padlocked, contrary to prison regulations.[1] An officer asked the defendant for the key, which he obtained from a fellow prisoner and handed to the officer. When the locker was opened, the officer discovered the marihuana which gave rise to this prosecution. The search was conducted without notice to any of the prisoners and was ordered pursuant to institutional guidelines which were set out in an officer's manual and in a handbook which is issued to each prisoner when he enters the institution. The guidelines are silent on the frequency of searches and leave the decision to order a shakedown to the discretion of the individual watch commanders.[2]

The defendant contends that the search and seizure in this case were unreasonable within the meaning of art. 14 of the Massachusetts Declaration of Rights. He is forced to rely on

---

[1] The officers appear to have tolerated padlocks as a means of affording a measure of privacy in relation to fellow prisoners. Compare *Marrero* v. *Commonwealth,* 222 Va. 754, 757 (1981).

[2] We attach no particular significance to the fact that the written guidelines were not offered in evidence (compare *Commonwealth* v. *Wilson,* 389 Mass. 115, 117 [1983]) because it would be unrealistic to suppose that the guidelines spell out the frequency of shakedowns or the circumstances in which they are to be conducted. As the watch commander testified, "if it was [written] down in the guidelines . . . [to] do it on certain days, certain times, [a] certain week, you won't find nothing, they'll be hiding everything . . . they'll dig a hole and bury it."

art. 14 because the United States Supreme Court has held that the protection of the Fourth Amendment to the United States Constitution does not extend to a prisoner's cell. *Hudson* v. *Palmer,* 468 U.S. 517, 525-526, 527-528, 536 (1984). Our consideration of art. 14 is narrowed by the concession in the defendant's brief that the officers were not required to have either a search warrant or probable cause to believe that contraband would be found in the locker. See *United States* v. *Chamorro,* 687 F.2d 1, 4 (1st Cir.), cert. denied, 459 U.S. 1043 (1982).

The threshold question under art. 14 is whether the defendant had a legitimate expectation of privacy in his locker which society would recognize as reasonable. See *Commonwealth* v. *Podgurski,* 386 Mass. 385, 386, 387, 388 (1982), cert. denied, 459 U.S. 1222 (1983); *Commonwealth* v. *Cadoret,* 388 Mass. 148, 150 (1983); *Commonwealth* v. *Simmons,* 392 Mass. 45, 48, 51, cert. denied, 469 U.S. 861 (1984); *Commonwealth* v. *Royce,* 20 Mass. App. Ct. 221, 224-225 (1985); *Commonwealth* v. *Serbagi, ante* 57, 60 (1986). As the defendant conceded at the argument, this is a question on which he had the burden of proof at the suppression hearing. *Commonwealth* v. *D'Onofrio,* 396 Mass. 711, 714-715 (1986). *Commonwealth* v. *Chappee,* 397 Mass. 508, 512 (1986). *Commonwealth* v. *Royce,* 20 Mass. App. Ct. at 224-225. *Commonwealth* v. *Serbagi, ante* at 60. He offered no evidence on the point.[3] The only relevant evidence was all to the contrary, namely, that the defendant had had no expectation of privacy, reasonable or otherwise, because he was in a prison and had been advised of the guidelines on shakedown searches when he entered the prison.[4] On the evidence, the judge would have been justified in concluding that there had been no "search" within the meaning of art. 14 of the Declaration of Rights.

---

[3] Nor does he address the point in his brief.

[4] We pass the point that the defendant may have had no reasonable expectation of privacy in the foot locker because he had entrusted the key to a fellow prisoner. See *Frazier* v. *Cupp,* 394 U.S. 731, 740 (1969) (joint control of duffel bag); *Rawlings* v. *Kentucky,* 448 U.S. 98, 104-106 (1980) (no reasonable expectation of privacy with respect to drugs contained in friend's purse).

Nor do we see that any search which may have occurred in this case was unreasonable under art. 14. In determining whether a search in a prison setting is reasonable or unreasonable we are enjoined to accord substantial deference to the judgment of the prison authorities as to what is necessary to preserve internal order and discipline. *Libby* v. *Commissioner of Correction,* 385 Mass. 421, 433, 434 (1982). *Champagne* v. *Commissioner of Correction,* 395 Mass. 382, 387 (1985). See also *Bell* v. *Wolfish,* 441 U.S. 520, 547-548 (1979); *Blackburn* v. *Snow,* 771 F.2d 556, 562 (1st Cir. 1985); *Marrero* v. *Commonwealth,* 222 Va. 754, 757 (1981). Searches such as this one are sanctioned by standard 23-6.10(c) of the A.B.A. Standards for Criminal Justice (2d ed. & Supp. 1982) and by the American Correctional Association Standards for Adult Correctional Institutions § 2-4192 (Supp. 1986) and § 4.9.8.D.1 of that section's associated guidelines. There is nothing in the record to suggest that the defendant was singled out for particular treatment. Compare *Commonwealth* v. *Harris,* 383 Mass. 655, 656 n.1, 657 (1981). Nor do we know the frequency with which such searches have been conducted; for all that appears, the present search was the only one of its kind ordered during the defendant's stay at Deer Island.[5]

We recognize that there may be instances in which art. 14 of the Declaration of Rights will call for greater protection of individual rights than that which is afforded by the Fourth Amendment to the United States Constitution. See *Commonwealth* v. *Upton,* 394 Mass. 363, 373-377 (1985); *Commonwealth* v. *Ford,* 394 Mass. 421, 426-427 (1985). But as the *Upton* case indicates (394 Mass. at 376), there must be a more persuasive reason for extending art. 14 protection than that counsel thinks a case such as *Hudson* v. *Palmer,* 468 U.S. 517 (1984), was wrongly decided. Compare *Commonwealth* v. *Simmons,* 392 Mass. at 51.

*Judgment affirmed.*

---

[5] All we know of the defendant's status is that he was at liberty at the time of trial.