## CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Michael Megel

January 8, 1998

Case No. (Criminal) 93115

BY JUDGE LESLIE M. ALDEN

This matter came before the Court upon Defendant's Motion to Suppress Evidence. The question presented by Defendant's motion is whether the warrantless search of Defendant's residence while he was participating in the Electronic Incarceration Program was lawful.

For the reasons set forth herein, the Court finds that the search of Defendant's residence was lawful and the Motion to Suppress Evidence is denied.

*Background*

On October 22, 1996, Defendant Michael Megel was sentenced in the General District Court to serve a six-month sentence in the Fairfax County Sheriff's Electronic Incarceration Program ("EIP"). Mr. Megel entered the EIP on February 21, 1997. On July 22, 1997, one deputy from the Fairfax County Sheriff's Office ("Sheriff") and two detectives from the Fairfax County Police Department ("Police"), acting on a tip received from an outside source that Mr. Megel had narcotics in his home, conducted a search of Mr. Megel's residence. Neither the Police nor the Sheriff had a warrant to search the house. As a result of the search, the Police found two firearms, and Mr. Megel was charged with possession of a weapon by a felon. Both the Sheriff and Police testified that they had Mr. Megel's verbal con-

sent to search the residence; however, Mr. Megel testified that he never consented to the search.

## Was the Search Legal?

Mr. Megel argues that the search of his residence violated his rights under the Fourth Amendment because the Police and Sheriff did not have a search warrant, and the circumstances in this case cannot be classified under any exception to the requirement of a search warrant. Further, Mr. Megel argues that he did not consent to the search nor waive his rights against unreasonable searches pursuant to the Fourth Amendment.

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. Such protection only applies when (1) the person has a legitimate expectation of privacy and (2) there is governmental conduct. Absent a legitimate expectation of privacy, there can be no violation of the Fourth Amendment protection against unreasonable searches and seizures. *Wells v. Commonwealth*, 6 Va. App. 541, 549 (1988). In determining whether a person has a reasonable expectation of privacy in the object to be searched, the court must consider (1) whether the person has exhibited an expectation of privacy in the object and (2) whether that expectation is one that society is prepared to recognize as reasonable. *Hudson v. Palmer*, 468 U.S. 517, 525 (1984), *citing Katz v. United States*, 389 U.S. 347 (1967). To determine whether an incarcerated person's expectation of privacy is reasonable, the Court must balance the interest of society in the security of its penal institutions and the interest of the prisoner in privacy within his cell. *Hudson* at 527.

Unquestionably, if Mr. Megel had been confined in a traditional detention center, the law would permit random searches of his prison dorm or cell without any need for a warrant or probably cause. *See Marrero v. Commonwealth*, 222 Va. 754, 757 (1981) (which held that random searches of inmates are necessary to ensure the security of the institution and the safety of all others within its boundaries). The Supreme Court has held that society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell. *See Hudson* at 526 (which held that the Fourth Amendment proscription against unreasonable searches does not apply within the confines of a prison cell). Further, the recognition of privacy rights for prisoners in their individual dorms or cells cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions. *Id.*

Here, Mr. Megel was incarcerated and under the custody of the Sheriff.[1] In lieu of being incarcerated in a typical detention facility, Mr. Megel was permitted to participate in the EIP, and he executed a written agreement to follow several restrictive rules as a condition to being confined, instead, in his residence. These rules, an extensive listing covering seven pages, required Mr. Megel to, among other things, submit to random urine tests, wear a monitoring device on his ankle for monitoring twenty-four hours a day, refrain from possession of weapons or intoxicating substances, and be subject to random unannounced home visits by the Sheriff. Given his participation in the EIP and submission to all of these rules, the Court finds that Mr. Megel did not have a reasonable expectation of privacy in his home while incarcerated there through the EIP. Mr. Megel's own testimony indicated that he believed he was required to permit the Sheriff to search his home at any time the Sheriff came for a home visit.

Further, an expectation of privacy while incarcerated at home is not one that society is prepared to recognize as reasonable. Mr. Megel's participation in the EIP does not relieve him of all of the typical obligations imposed on prisoners incarcerated in traditional detention facilities. Mr. Megel's residence, essentially, was his prison cell. While the prison cases offered by the Commonwealth have recognized institutional security as one basis for permitting random searches, they also recognize the need for random searches to eliminate the possession of illegal contraband by prisoners. *Marrero*, at 757. Similar concerns arise with participants of the EIP. In order to maintain the security of the prisoners confined in their homes, it is valid and necessary to permit the Sheriff to conduct random searches of their residences for contraband which is clearly prohibited under the rules of the EIP. Further, such searches are valid and necessary to ensure the safety of all others within the boundaries of the prisoner, i.e., the neighborhood and area surrounding the prisoner's person or residence.

The Court believes that society is not prepared to recognize any lesser standard of security within the prisoner's "jail cell" for prisoners confined in their residences than would be recognized for prisoners confined in more

---

[1] Mr. Megel cites 1997 Va. AG S-21 for the proposition that a person serving time in the EIP is not incarcerated. The Attorney General's Opinion reflects a strict reading of a statute, which in clear and unambiguous language, requires that good conduct credit shall be allowed to a prisoner for such time as he is *confined in jail*. Because participants in the EIP are not *confined in jail*, they are not eligible for good conduct credit. This Opinion is simply inapposite as Mr. Megel was plainly incarcerated in his home, not jail.

typical detention facilities. Indeed, a higher standard of security may be more appropriate for participants of the EIP as the consequences of a breach of security could directly involve society and would not be limited solely to the confines of the detention facility. Further, in balancing the interests in this case, greater weight should be placed on the security of the prisoner and his environs than on his interest in privacy under these circumstances.

The public policy of the Commonwealth includes an intent to avoid the unnecessary imposition of punishment, to promote the public interest in order and safety, and to effect the reformation of the criminal. *Singleton v. Commonwealth*, 11 Va. App. 575, 578 (1991). The EIP promotes these public policy objectives of the Commonwealth as it seeks to promote public order and safety, to effect Mr. Megel's reformation, and to curtail his unlawful conduct. Consistent with these objectives, permitting random searches of Mr. Megel's residence serves to promote these purposes and helps to ensure the safety of the public while Mr. Megel remained in his residence rather than in a traditional prison environment.

Finally, despite the fact that the Police performed the actual search of Mr. Megel's residence rather than the Sheriff, the search is still lawful. The Sheriff was authorized to perform the search because Mr. Megel was in custody. As the Police were acting under the Sheriff's authority at the time of the search, the search is lawful. In addition, although the testimony was conflicting, from the evidence presented, the Court concludes that Mr. Megel consented to the officer's request to search, thus obviating the need for a warrant.

## Conclusion

The Court finds that the search of Mr. Megel's residence on July 22, 1997, was lawful. Mr. Megel was incarcerated and under the custody and supervision of the Sheriff and did not have any reasonable expectation of privacy due to his status, even though he was confined in his own home rather than a traditional prison cell. Further, from the evidence presented, the Court concludes that Mr. Megel consented to the search of his home. Accordingly, Mr. Megel's Motion to Suppress Evidence is hereby denied and an order so providing shall be entered on this date.