# Richmond

## RICHARD EARL MCFADDEN

### V.

## COMMONWEALTH OF VIRGINIA

March 11, 1983.

Record No. 820698.

Present: Carrico, C.J., Cochran, Poff, Compton, Thompson,*
Stephenson and Russell, JJ.

---

\* Justice Thompson participated in the hearing and decision of this case prior to the
effective date of his retirement on March 2, 1983.

104

*Thomas W. Dixon, Jr. (Nelson, Mcpherson, Summers & Santos,* on brief), for appellant.
*Thomas D. Bagwell, Assistant Attorney General (Gerald L. Baliles, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

The question in this criminal appeal is whether inculpatory statements made by the accused were voluntary and were made with a knowing, intelligent waiver of the right to counsel.

On April 23, 1980, the Humpback Rock Visitors' Center, operated by the National Park Service on the Blue Ridge Parkway in Augusta County, was entered unlawfully. A calculator, a wooden plane, a flat iron, and a flag were stolen. Almost a year later, on April 19, 1981, the Center was again vandalized. Publications offered for sale were stolen, and the building was destroyed by fire.

Subsequently, after a suppression hearing and a bench trial, defendant Richard Earl McFadden was convicted for the 1980 crimes of breaking and entering, and petit larceny. He was also convicted of the 1981 crimes of breaking and entering, grand larceny, and arson. Defendant appeals the January 1982 judgment of conviction sentencing him to a total of 11 years in prison plus 12 months in jail for the foregoing offenses.

According to settled appellate principles, we will view the facts, although disputed, in the light most favorable to the Commonwealth. During this recitation, completeness requires reference to crimes allegedly involving McFadden which occurred in Amherst

County and Nelson County, unrelated to the instant Augusta County offenses.

Ten days after the 1981 Augusta crimes, on April 29 about 8:00 p.m., defendant, age 23, was brought from his Lynchburg home by an Amherst deputy sheriff to a magistrate's office in Madison Heights for questioning. McFadden was employed as an Institutional Police Officer on the grounds of the Lynchburg Training School and Hospital. After advising defendant of his rights as required by *Miranda* v. *Arizona,* 384 U.S. 436 (1966), Investigator Morris of the Virginia Division of Forestry began to interrogate McFadden about fires that had been set in Amherst County. In a few minues, defendant said, "I'm not going to say any more. I want to see a lawyer." Morris immediately ceased the questioning and left the room.

Amherst Deputy Sheriff Brown, a personal friend of defendant, then entered the room and talked to McFadden for 20 minutes. Morris had advised Brown that defendant wanted a lawyer. Initially, McFadden told Brown he desired counsel and that he did not want to talk to Brown. The two then discussed defendant's job and their service together as police officers. Brown told defendant that he could be charged as a police officer for withholding evidence (a non-existent crime, according to the Attorney General). Defendant said, "Let me think about it." As Brown was leaving the room, defendant said he would "go ahead" and talk to Brown "about it." Brown then advised defendant of his *Miranda* rights and defendant executed a written waiver of those rights. Next, Brown interrogated McFadden about the Amherst fires, not the instant offenses.

Defendant was permitted to leave the magistrate's office before 9:00 p.m. to return home. Near midnight, Brown went to defendant's home, brought him back to the magistrate's office, advised him of his *Miranda* rights, questioned him about 15 minutes (not about the present offenses), and returned defendant to his home.

Some time after noon on April 30, defendant reported to the Amherst Sheriff's Office in response to a call from another Amherst deputy. McFadden was arrested, charged with setting fires in Amherst County, and counsel was appointed to represent him on those charges. The record does not reveal whether defendant talked to the attorney before 4:00 p.m. on that day, when Chief Deputy Dixon, of the Nelson County Sheriff's Department, began

questioning McFadden in Amherst County about a break-in of a rescue squad building in Nelson County.

Prior to any interrogation, Dixon warned defendant as required by *Miranda* and McFadden signed a waiver of rights. Upon request, defendant executed a consent form authorizing the police to search his automobile in connection with the Nelson County offenses. Dixon departed to search the vehicle, returning about one hour later. Thereupon, the officer again advised defendant according to *Miranda*. McFadden again executed a waiver of his rights, gave a statement about the Nelson crimes, and, at 5:55 p.m., executed another form granting permission to search his residence. At the time, Dixon was not investigating the instant Augusta County offenses and thus did not ask defendant about them.

During the search of defendant's home about 5:00 a.m. on May 1, Dixon discovered and seized a calculator and wooden plane, stolen during the 1980 Augusta incident. When searching defendant's car, Dixon had observed some publications, apparently taken from the Humpback Center in the 1981 break-in.

Later on May 1, about 8:00 a.m., Dixon again read defendant his *Miranda* rights and McFadden made an oral waiver. He then admitted participation in the 1981 Augusta crimes; the confession was later received in evidence at trial. Dixon did not interrogate defendant about the 1980 Augusta offenses. Also, Dixon had not been told that defendant earlier had requested an attorney during interrogation about Amherst charges. Moreover, McFadden at no time during his contact with Dixon asked for an attorney.

On May 6, 1981, after McFadden orally waived his *Miranda* rights, Investigator Fisher of the Augusta Sheriff's Department interrogated defendant in the Amherst Sheriff's Office about the 1980 Augusta offenses. McFadden confessed to breaking and entering the Center and stealing the various items reported missing; that statement was also introduced at trial. During Fisher's interview, defendant never requested an attorney.

Subsequently, defendant was indicted for the offenses and arrested. Following the suppression hearing and again during trial, the court below denied defendant's motions to exclude the plane and calculator as well as the statements of May 1 and 6 from evidence. Implicit in the court's ruling was the finding that defendant voluntarily consented to the search of his home, and that the statements were likewise voluntary, made after a knowing, intelligent waiver of counsel. The foregoing evidence of the Common-

wealth was supplemented at trial by the testimony of an accomplice and other witnesses, resulting in defendant's convictions.

Preliminarily on appeal, defendant attacks the voluntariness of the consent to search and of the confessions. The claim, based on defendant's testimony at the pre-trial hearing, is that McFadden was subject to police coercion, intimidation, and duress. But voluntariness is a factual question. The determination of such issue by the trial court on conflicting evidence will not be disturbed on review unless plainly wrong. *Witt* v. *Commonwealth*, 215 Va. 670, 674-75, 212 S.E.2d 293, 297 (1975). Here, the factual decision turned on the credibility of witnesses—the law enforcement authorities versus the accused—and we cannot say that the trial court's determination in favor of the prosecution was plainly wrong.

As the defendant correctly observed during oral argument before us, the scope of the real issue on appeal is confined to the question whether use of the confessions at trial violated defendant's right, under the Fifth and Fourteenth Amendments, to have counsel present during custodial interrogation, as declared in *Miranda* and refined in *Edwards* v. *Arizona*, 451 U.S. 477 (1981). *See* Va. Const. art. I, §§ 8 and 11.

In *Edwards,* the defendant was arrested on a state-court complaint charging him with robbery, burglary, and murder. At the police station, he was informed of his rights as required by *Miranda,* gave a statement which denied guilt, and presented an alibi defense. Then Edwards sought to "make a deal" and asked for an attorney. Questioning ceased and defendant was taken to jail.

The next morning, a guard at the jail told Edwards "he had" to talk with two detectives who arrived to question him; they were colleagues of the officer who had interrogated defendant the previous evening. After being informed of his *Miranda* rights, defendant submitted to questioning by the officers and implicated himself in the crime.

Reversing the highest court of Arizona, the Supreme Court noted that, under *Miranda,* "an accused has a Fifth and Fourteenth Amendment right to have counsel present during custodial interrogation." 451 U.S. at 482.* The Court further said that a waiver of counsel "must not only be voluntary, but must also con-

---

* *Edwards* does not deal with the question whether the State deprived the accused of his right to counsel under the Sixth and Fourteenth Amendments. 451 U.S. at 480 n.7.

stitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.' *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)." *Id.*

The Court continued:

> "[W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights [footnote omitted]. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. at 484-85.

Concluding Edwards' inculpatory statement was obtained during custodial interrogation at the insistance of the police, the Court decided it was inadmissible because his right to counsel had not been validly waived. 451 U.S. at 487. *Cf. LaBonte v. Commonwealth,* 217 Va. 677, 678-79, 232 S.E.2d 738, 739 (1977); *Skinner v. Commonwealth,* 212 Va. 260, 263, 183 S.E.2d 725, 728 (1971); *Penn v. Commonwealth,* 210 Va. 229, 241, 169 S.E.2d 419, 427 (1969) (valid waivers occurred when accused initiated conversation with police).

Turning to the present case, we will agree with defendant and assume, contrary to the Attorney General's position, but not decide that McFadden was "in custody" and was being "interrogated" at all relevant times during the April 29-May 6 period. *See Rhode Island v. Innis,* 446 U.S. 291 (1980); *Adkins v. Commonwealth,* 218 Va. 945, 948-49, 243 S.E.2d 205, 207-08 (1978); *Owens v. Commonwealth,* 218 Va. 69, 235 S.E.2d 331 (1977); *Jordan v. Commonwealth,* 216 Va. 768, 771-73, 222 S.E.2d 573, 576-77 (1976). Nevertheless, and contrary to defendant's argument, we hold under the circumstances of this case that *Edwards* does not require suppression of the challenged statements given by defendant on May 1 and May 6.

There are significant factual differences between *Edwards* and the present situation. In *Edwards,* the inculpatory statement related to the same crime for which the accused had requested representation by counsel the previous day. Moreover, the interrogation was by associates from the same jurisdiction as the officer to whom Edwards previously made his request for an attorney.

In contrast, McFadden sought counsel during questioning by State and Amherst officers about crimes occurring in Amherst County. Yet, the challenged inculpatory statements concerned Augusta incidents remote from the Amherst crimes which generated defendant's exercise of his right to counsel. Additionally, they were given to Augusta authorities, who had no knowledge of the Amherst request for counsel. Also, they were given at times separate from the interrogations about the unrelated Amherst offenses. Under these circumstances, the Augusta authorities on May 1 and May 6 properly initiated questioning of defendant because McFadden did not invoke his right to have counsel present during those periods of custodial interrogation. *See Simmons* v. *Commonwealth,* 225 Va. 111, 300 S.E.2d 918 (1983), (decided today).

■ Consequently, and given the background, experience, and conduct of McFadden (a trained law enforcement officer) as shown by the record, we conclude defendant's waivers during the May interrogations constituted knowing, intelligent relinquishments of his right to counsel. Hence, the challenged evidence was properly admitted at trial.

For these reasons, the judgment appealed from will be

*Affirmed.*