STATE OF NORTH CAROLINA v. KENNY DAMPIER

No. 505A84

(Filed 13 August 1985)

1. **Criminal Law § 75.8— interrogation by Georgia officers—invoking right to counsel—subsequent initiation of interrogation by North Carolina officers**

Where defendant invoked his Fifth Amendment right to counsel in the presence of Georgia authorities while being questioned about crimes in Georgia, North Carolina officers were not charged with defendant's request for counsel made to the Georgia authorities when they questioned defendant about unrelated crimes committed in North Carolina, and their initiation of questioning of defendant about the North Carolina crimes did not violate the rule of *Edwards v. Arizona*, 451 U.S. 477 (1981). Furthermore, under the totality of the circumstances, defendant's incriminating statements about the North Carolina crimes, made after appropriate Miranda warnings, were voluntarily and knowingly made.

**2. Criminal Law § 75.4— interrogation of defendant—no Sixth Amendment right to counsel**

Although the State had "narrowed its focus" upon defendant when North Carolina officers questioned defendant in Georgia about crimes committed in North Carolina, defendant's Sixth Amendment right to counsel had not attached when he was questioned about the North Carolina crimes where it is apparent that the State had not at that time committed itself to prosecute.

BEFORE *Albright, J.*, at the 2 April 1984 Criminal Session of Superior Court, DAVIDSON County, defendant was convicted of two counts of first-degree murder. From a sentence of two consecutive life terms, defendant appeals as a matter of right. N.C.G.S. § 7A-27(a).

On 10 February 1977 the bodies of 66-year-old Myrtis Miller and her three-year-old granddaughter, Crystal Dawn Miller, were found in their Lexington, North Carolina home. In addition to having had their throats cut, both had been beaten and repeatedly stabbed. From 12 February 1977 until sometime before his 4 April 1984 conviction for these murders, defendant was in the custody of the Georgia Department of Corrections serving a prison sentence following a guilty plea to first-degree murder for a killing that occurred in Georgia on 9 February 1977.

At trial, counsel for defendant moved to suppress any statements that defendant may have given as violative of the fifth and sixth amendments to the United States Constitution made applicable to the states through the fourteenth amendment. Because the State failed to give advance written notice of its intent to offer defendant's statement against him, the trial judge conducted a voir dire hearing at trial on the admissibility of defendant's confession. At the conclusion of that hearing the trial court overruled defendant's motion to suppress.

*Lacy H. Thornburg, Attorney General, by Ellen B. Scouten, Assistant Attorney General, for the State.*

*Charles H. Harp, II, Attorney for defendant-appellant.*

MEYER, Justice.

Defendant raises one issue on appeal to this Court: whether defendant's confession should have been suppressed as violative of defendant's fifth, sixth, and fourteenth amendment rights to

counsel as guaranteed by the United States Constitution. For the reasons stated herein, we have concluded that defendant's statement was properly admitted *into evidence and we therefore find no error.*

Based on testimony presented during the voir dire hearing, the trial judge made extensive findings of fact. Those findings may be summarized as follows:

At about 6:30 a.m. on 12 February 1977, defendant was arrested in a Savannah, Chatham County, Georgia hotel pursuant to Georgia warrants charging auto theft, armed robbery, and first-degree murder. Upon his arrest, defendant was advised of his constitutional rights as required by *Miranda v. Arizona,* 384 U.S. 436, 16 L.Ed. 2d 694 (1966). Defendant was neither interrogated nor did he make any statement following his arrest. At 10:05 a.m. that same morning, defendant was re-advised of his constitutional rights and informed of the Georgia charges being brought against him. At that time, defendant invoked his right to have counsel present during further custodial interrogation. Defendant's right not to be further questioned was "scrupulously honored by the Georgia officers," and the interrogation immediately ceased. The Georgia authorities neither attempted to question, nor in fact did they question, defendant about the North Carolina crimes as they were unaware of them at the time.

Pursuant to investigative leads derived from Chatham County District Attorney Andrew Ryan, authorities from North Carolina arrived in Savannah on 13 February 1977. This investigative team consisted of Davidson County Sheriff Paul McCrary, SBI Special Agent John Burns, Davidson County District Attorney H. W. Zimmerman, and former Davidson County Chief Deputy Jack Everhart. At about 6:00 p.m. that afternoon, Sheriff McCrary and Agent Burns requested that "if possible" defendant be brought from his jail cell to an interview room. After defendant was seated, the sheriff informed him of the meeting's purpose: to gather information concerning the Davidson County murders. Sheriff McCrary then "carefully warned" defendant of the same constitutional rights read to him the day before by Georgia authorities. Each right was read to defendant and he in turn read each right to himself and acknowledged an understanding thereof.

Subsequently, Sheriff McCrary read to defendant the following "waiver of rights":

> I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

Defendant immediately acknowledged an understanding of this waiver and signed the written waiver form. In addition, the trial judge found that somewhere in this process, "the defendant of his own volition and not in response to any question propounded by the Sheriff or Agent Burns made the statement [that] his 'conscience was bothering him in regard to the little girl.' "

Immediately after signing the waiver of rights form, defendant gave an oral statement to the officers concerning the North Carolina murders. That statement was reduced to writing, and after having read it completely, defendant signed it. In corroboration of his statement, defendant drew a map of the Davidson County residence, including the specific location of the Millers' bodies. At no time during the interrogation by Sheriff McCrary and Agent Burns did defendant attempt to invoke either his right to remain silent or his right to counsel.

Defendant contends that the confession given to North Carolina authorities is governed by the rule articulated in *Edwards v. Arizona*, 451 U.S. 477, 68 L.Ed. 2d 378, *reh'g denied*, 452 U.S. 973, 69 L.Ed. 2d 984 (1981), and should have been suppressed. The trial court concluded as a matter of law that "it was not constitutionally impermissible for Sheriff McCrary and Agent Burns to question the defendant about the Davidson County murders, notwithstanding the fact that the defendant had earlier invoked his right to remain silent and his right to have counsel present during custodial interrogation, during questionning [sic] by the Chatham County police officers regarding unrelated criminal charges in Chatham County, Georgia." We agree. Facts found by the trial courts are binding on the appellate courts when supported by competent evidence, but the conclusions drawn therefrom are not binding and are reviewable. *State v. Booker*, 306 N.C. 302, 293

S.E. 2d 78 (1982); *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511 (1968).

**[1]**    Our first concern, and one raised by the State, is whether the rule in *Edwards* should be applied retrospectively to the case *sub judice*. We note that *Edwards* was decided some four years after defendant was questioned in Georgia, yet some three years before he was tried in a North Carolina court. The State asks that we apply the reasoning of *Solem v. Stumes*, 465 U.S. 638, 79 L.Ed. 2d 579 (1984), which holds that reliance on *Edwards* by federal courts is misplaced when undertaking collateral review of police conduct prior to that decision. The Supreme Court has subsequently held, however, that *Edwards* does apply to cases pending on direct appeal when the rule was announced. *Shea v. Louisiana*, --- U.S. ---, 84 L.Ed. 2d 38 (1985). *Edwards* was decided in 1981. The questioning and indictment of Dampier took place in 1977 and his case was not tried until 1984. Because of the particular chronology of this case this Court might avoid addressing the *Edwards* issue altogether. However, because we believe *Edwards* is inapplicable for reasons other than chronology, we address that issue.

In *Edwards,* the defendant was arrested, taken to a police station, advised of his *Miranda* rights and questioned. After initially denying any criminal involvement, Edwards sought to make a deal but stated, "I want an attorney before making a deal." Questioning immediately ceased and Edwards was sent to jail. The next morning, two detectives from the same police agency sought to question Edwards about the same crimes for which he had earlier asserted his fifth amendment right to counsel. Although Edwards told the jailer he did not wish to talk to anyone, he was told he "had to" talk. After hearing the taped statement of an accomplice, defendant then implicated himself in the suspected crime. Evidence concerning Edwards' confession was admitted at trial, and he was convicted.

The United States Supreme Court found that Edwards' fifth amendment right to counsel had been violated and held that:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an ac-

cused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police. (Footnote omitted.)

*Edwards*, 451 U.S. at 484-85, 68 L.Ed. 2d at 386. More recently, the Supreme Court stated that *Edwards* established "in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in *Edwards* was." *Oregon v. Bradshaw*, 462 U.S. 1039, 1044, 77 L.Ed. 2d 405, 411 (1983) (plurality opinion).

Because of factual distinctions, however, the rule in *Edwards* is inapplicable to the case at bar. In *Edwards*, the defendant's subsequent interrogation was conducted by officers from the same agency as those to whom he had earlier requested an attorney, and the inculpatory statement given by him involved the same crime for which his right to counsel was previously invoked. In contrast, this defendant invoked his right to counsel only in the presence of Georgia authorities. The subsequent interrogation was by North Carolina authorities and the ensuing inculpatory statement involved crimes wholly separate from those for which he previously invoked his right to counsel. The trial court specifically found that:

41. The interrogation by Sheriff McCrary and Agent Burns was not a continuation or resumption of the interrogation initiated by the Georgia officers and did not in any way constitute a re-interrogation on the Georgia cases; rather, the interrogation by Sheriff McCrary and Agent Burns was independent and unrelated to the Georgia cases, and instead focused exclusively on the Davidson County murders, crimes different in time and place of occurrence from the Chatham County cases for which the defendant had been arrested and initially interrogated by the Chatham County authorities.

We find these factual distinctions, as did the trial court, too significant to require application of the *Edwards* rule. *See McFadden v. Commonwealth*, 225 Va. 103, 300 S.E. 2d 924 (1983) (questioning of defendant properly initiated by officers who had no knowledge of defendant's prior exercise of fifth amendment right

to counsel toward officers from different jurisdiction regarding other remote incidents of crime); *State v. Willie,* 410 So. 2d 1019 (La. 1982) (defendant's refusal to answer FBI agent's questions about federal crimes without an attorney should not be construed as a per se invocation of his fifth amendment right as to independent state offenses so as to require all interrogation as to the latter to cease). *But see United States v. Scalf,* 708 F. 2d 1540 (10th Cir. 1983) (once a suspect has invoked the right to counsel, knowledge of that request is imputed to all law enforcement officers who subsequently deal with the suspect); *State v. Routhier,* 137 Ariz. 90, 669 P. 2d 68 (1983), *cert. denied,* 464 U.S. 1073, 79 L.Ed. 2d 221 (1984) (factual distinction as to unrelated subject matter does not hold any legal significance for fifth amendment purposes).

Furthermore, we find that the strictures of *Miranda* do not as a matter of law require us to reach the result urged by defendant. In *Miranda,* the Supreme Court held that:

[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. . . . The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.

384 U.S. at 444-45, 16 L.Ed. 2d at 706-07. The procedural safeguards formulated by *Miranda* were designed to dispel the compulsion inherent in custodial interrogation. *Id.* at 457, 16 L.Ed. 2d at 713. It is undeniable that defendant invoked his right to counsel to Georgia authorities regarding the Georgia crimes being investigated by them. However, it is equally undeniable that defendant, after appropriate *Miranda* warnings, failed to invoke any of his fifth amendment rights in the presence of the North Carolina officers. The trial judge specifically found that defendant "knew full-well all of his constitutional rights, including his right to remain silent and his right to have counsel present during custodial interrogation." During the interrogation by the North

Carolina officers, defendant, with full knowledge of his fifth amendment rights, chose not to invoke them.

Based on our reading of the record, it is apparent that both the North Carolina and Georgia authorities handled their investigations with adequate regard for defendant's constitutional rights, especially in view of the fact that the *Edwards* decision was still some four years away. The voir dire testimony supports the trial judge's findings of fact which in turn support his conclusions of law. We hold that under the facts of this case, the North Carolina officers were not charged with defendant's request for counsel made to Georgia authorities concerning unrelated Georgia offenses and that their initiation of questioning was not prohibited. Consequently, we find no violation of defendant's fifth amendment rights under the *Edwards* rule.

Having found no violation of the *Edwards* rule, we must next determine whether under the totality of the circumstances defendant's statement was voluntarily and knowingly made. *State v. Schneider*, 306 N.C. 351, 293 S.E. 2d 157 (1982); *State v. Bishop*, 272 N.C. 283, 158 S.E. 2d 511. "[T]he burden remains upon the prosecution to show that subsequent events indicated a waiver of the Fifth Amendment right to have counsel present during the interrogation." *Bradshaw*, 462 U.S. at 1044, 77 L.Ed. 2d at 412.

It is evident from the findings of fact summarized above that defendant fully understood both his constitutional rights and the written waiver of those rights which he signed. The trial court also found that defendant was in full control of his mental and physical faculties when he made his statement and that no one threatened him or promised anything in return for the statement. The trial court concluded that defendant made his statement "freely, voluntarily, and understandingly, without duress, coercion, or inducement, and after affirmative waiver by the defendant in writing of his constitutional rights. . . ." This conclusion is fully supported by the findings of fact which are based on competent testimony. Therefore, we hold that under the totality of the circumstances defendant did knowingly and voluntarily waive his fifth amendment right to have counsel present during custodial interrogation before he made any statements to the North Carolina officers.

**[2]** Defendant also asserts that his sixth amendment right to counsel had attached at the time he was questioned by authorities from North Carolina and that this right was violated when defendant was questioned in the absence of counsel. We find no merit in this contention. It is well-settled that the sixth amendment right to counsel attaches only upon the initiation of adversary judicial criminal proceedings, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois,* 406 U.S. 682, 32 L.Ed. 2d 411 (1972); *State v. Baugus,* 310 N.C. 259, 311 S.E. 2d 248, *cert. denied,* --- U.S. ---, 83 L.Ed. 2d 76 (1984). "It is only when the defendant finds himself confronted with the prosecutorial resources of the state arrayed against him and immersed in the complexities of a formal criminal prosecution that the sixth amendment right to counsel is triggered as a guarantee." *State v. McDowell,* 301 N.C. 279, 289, 271 S.E. 2d 286, 293 (1980), *cert. denied,* 450 U.S. 1025, 68 L.Ed. 2d 220, *reh'g denied,* 451 U.S. 1012, 68 L.Ed. 2d 865 (1981).

Although the State had "narrowed its focus" upon defendant when questioned in Georgia, it is apparent that the State had not committed itself to prosecute. Indeed, the record shows that defendant was not indicted for the North Carolina murders until 14 February 1977, the day after he was questioned about them. Furthermore, counsel was not appointed to represent defendant in North Carolina until 10 June 1983. Therefore, we hold that defendant's sixth amendment right to counsel had not attached when he was questioned by the North Carolina authorities about the offenses for which he was later convicted.

For the foregoing reasons, we find

No error.