**Richard Earl McFADDEN, Sr., Appellant,**

v.

**D.A. GARRAGHTY, Warden, Appellee.**

**No. 85–6148.**

United States Court of Appeals,
Fourth Circuit.

Argued March 5, 1987.

Decided June 8, 1987.

Michael O. Spivey, Student Counsel (Steven Goldblatt, Director, Appellate Litigation Clinical Program, Georgetown University Law Center, Samuel Dash, Director, Washington, D.C., Ellen Pearlman, Appellate Law Fellow, Lesley Anne Fair, Appellate Law Fellow, Ralph C. Voltmer, Student Counsel, on the brief), for appellant.

Leah A. Darron, Asst. Atty. Gen. (Mary Sue Terry, Atty. Gen. of Va., Thomas D. Bagwell, Sr. Asst. Atty. Gen., Richmond, Va., on the brief), for appellee.

Before RUSSELL and WILKINS, Circuit Judges, and TIMBERS, Senior Circuit Judge for the Second Circuit Court of Appeals, sitting by designation.

TIMBERS, Circuit Judge:

Richard E. McFadden ("appellant"), a state prisoner, appeals from a judgment entered February 6, 1985 in the Western District of Virginia, James H. Michael, Jr., *District Judge*, dismissing his petition for a writ of habeas corpus. The petition, brought pursuant to 28 U.S.C. § 2254 (1982), sought relief on three grounds: first, that appellant's conviction was obtained by the use of coerced confessions; second, that the conviction was obtained by the use of information stemming from an illegal arrest; and, third, that the conviction was obtained in violation of his Fifth Amendment[1] privilege against self-incrimi-

---

**1.** Throughout this opinion, to avoid repetition, we shall refer to the *Fifth* Amendment privilege which of course is made applicable to the states by the *Fourteenth* Amendment. The instant appeal from the denial of a state prisoner petition for a writ of habeas corpus involves a state prosecution.

nation. The court held that the Fifth Amendment did not require suppression of the confessions challenged by appellant because, even if there had been a violation of the rule of *Edwards v. Arizona*, 451 U.S. 477 (1981), which prohibits the continuation of interrogation once an accused requests counsel until counsel is present or the accused initiates communication, appellant's request for counsel was "dissipated" due to breaks in custody. The court also deferred to the state courts' findings on the voluntariness of the confessions.

On appeal, appellant argues, first, that his confession of April 29, 1981 was a result of police reinterrogation after appellant's assertion of his right to counsel, in violation of the *Edwards* rule; second, that the confession obtained illegally on April 29 tainted subsequent confessions and consents to search given during the ensuing days of April 30 through May 6; and, third, that the confessions and consents given on May 1 and May 6 were involuntary.

We hold that appellant's confession of April 29 was obtained in violation of *Edwards* because the police did not honor appellant's request for counsel and reinterrogated him in the absence of appellant's initiation of any communication with them. We also hold that, because appellant was twice permitted to leave the magistrate's office after questioning, he was not in continuous custody. Moreover, he was interrogated after a passage of time, in a changed place, by different law enforcement authorities; the initial violation of *Edwards* therefore did not taint the subsequent confessions and consents to search. We further hold that appellant's confessions and consents to search were voluntary under the Fifth Amendment.

We affirm.

## I.

Appellant is a prisoner of the State of Virginia. He was convicted on October 9, 1981 of crimes arising from a break-in at the Humpback Rock Visitors' Center ("Visitors' Center") in Augusta County in April 1980 and a break-in and arson of the Visitors' Center in April 1981. In 1980 the Visitors' Center was broken into and an antique plane, a calculator and a flag were stolen. In 1981 the Visitors' Center again was broken into and publications were stolen. The Visitors' Center also was vandalized and set on fire as part of the 1981 incident. Appellant was convicted of breaking and entering, petit larceny, grand larceny and arson. On the convictions of breaking and entering, grand larceny and arson, he was sentenced to eleven years at hard labor in the state penitentiary. On the conviction of petit larceny, appellant was sentenced to twelve months in jail. He is presently incarcerated.

We summarize only those facts believed necessary to an understanding of the issues raised on appeal.

At approximately 8:00 P.M. on April 29, 1981 appellant, an institutional police officer employed by the Lynchburg Training School and Hospital, was met at his home by Deputy Brown, a member of the Amherst County Sheriff's Department. Brown, a personal friend of appellant, indicated that he wished to question him regarding some fires which had been set in Amherst County. Brown informed appellant that the questioning was to take place in the magistrate's office in Madison Heights and declined appellant's request to drive himself to that office. Brown then drove appellant to the office, where they were met by Investigator Morris of the Virginia Division of Forestry. After advising appellant of his constitutional rights, as required by *Miranda v. Arizona*, 384 U.S. 436 (1966), Morris began interrogating appellant concerning the Amherst County fires. The record indicates that, after approximately ten minutes of questioning, appellant stated, "I'm not going to say any more. I want to see a lawyer." Morris immediately ceased questioning appellant and left the room. He then informed Brown, waiting outside, that appellant had asserted his right to counsel.

Brown entered the room and asked appellant if he would speak with him about the fires. Again, appellant refused to speak about the incident, indicating that he desired the assistance of counsel. The con-

versation then turned to their jobs as police officers and their long-time friendship. Brown next warned appellant, falsely, that he could be charged as a police officer for withholding evidence. After this, Brown inquired whether appellant had anything further to say, to which appellant responded, "Let me think about it." As Brown prepared to leave the room, appellant told him he would speak with him. Brown advised appellant of his *Miranda* rights. Appellant signed a waiver of them. He then made a statement concerning the setting of the Amherst fires.

At approximately 9:00 P.M. Brown drove appellant home. Near midnight, Brown returned to appellant's home, woke him up, and drove him back to the magistrate's office for more questioning about the Amherst County fires. At the commencement of this second interrogation appellant again was advised of his *Miranda* rights. Appellant waived his rights, was questioned for fifteen minutes, and then was driven home.

Sometime after noon on the next day, April 30, appellant responded to a telephone call from another Amherst County Deputy by reporting to the Amherst County Sheriff's Office. Upon his arrival, appellant was arrested and charged with setting the fires in Amherst County. Sometime during that afternoon, appellant was arraigned and requested counsel. Counsel was appointed at the arraignment. *McFadden v. Commonwealth*, 225 Va. 103, 106, 300 S.E.2d 924, 925 (1983).

We are unable to discern from the record whether appellant spoke with his appointed counsel before 4:00 P.M. on that day, when Chief Deputy Dixon, of the Nelson County Sheriff's Department, arrived at the Amherst County Sheriff's Office to interrogate appellant about the break-in of a rescue squad building in Nelson County. Dixon, also a friend of appellant, advised appellant of his *Miranda* rights. Appellant signed a waiver of them. After approximately thirty minutes interrogation, Dixon departed with appellant's executed consent form which authorized the police to search his vehicle in connection with the Nelson County break-in. Dixon returned one hour la-

ter, at which time he again advised appellant of his *Miranda* rights. Appellant again signed a waiver of them. Thereafter he gave a statement about the Nelson County break-in. Using one of the Amherst County Sheriff's Department consent forms, the Nelson County deputy then obtained appellant's written permission to search his residence.

At 5:00 A.M. on the morning of May 1, Dixon, and other officers from the Amherst County Sheriff's Department and the Division of Forestry, commenced the search of appellant's home. Among other things, the officers seized a calculator and a wooden airplane. These later were found to have been stolen during the 1980 break-in of the Visitors' Center in Augusta County. After the search of appellant's home, the Nelson County deputy recalled that while searching appellant's car he had observed pamphlets from the Visitors' Center which later were found to have been taken during the break-in and arson of the Visitors' Center. These crimes had been committed approximately three weeks earlier.

At 8:00 A.M. Dixon returned to question appellant regarding the recent break-in and arson at the Visitors' Center. At the commencement of the interrogation, Dixon again advised appellant of his *Miranda* rights. Appellant waived them orally. Appellant then admitted participation in the recent break-in and arson at the Visitors' Center.

Five days later, on May 6, Investigator Fisher of the Augusta County Sheriff's Department arrived at the Amherst County Sheriff's Office to interrogate appellant with regard to the 1980 break-in of the Visitors' Center. Fisher advised appellant of his *Miranda* rights prior to questioning him. Appellant orally waived them and confessed to the 1980 crime.

On May 26, an indictment was filed charging appellant with the 1980 break-in and 1981 break-in and arson of the Visitors' Center. Appellant filed a pre-trial motion for an order suppressing his statements of May 1 and May 6 and the consents to search of April 30. He argued that they were the result of police overreaching and

therefore were involuntary. After two suppression hearings, on September 25 and October 9, the state trial court denied the motions. Appellant then was tried and convicted on October 9.

Appellant appealed to the Virginia Supreme Court. He again argued that his confessions and consents to search his vehicle and home were involuntary. Appellant argued further that the confessions were obtained in violation of his Fifth Amendment right to have counsel present during custodial interrogation.

The Virginia Supreme Court affirmed appellant's conviction. *McFadden, supra,* 225 Va. at 110, 300 S.E.2d at 928. It held, first, that implicit in the trial court's ruling on the suppression motions was the finding that appellant voluntarily had consented to the search of his vehicle and home and that the statements likewise were voluntary, having been made after a knowing and intelligent waiver of counsel. The Court refused to disturb these findings, holding that the determination of voluntariness was not plainly wrong. 225 Va. at 108, 300 S.E.2d at 926.

The Court further held that the Fifth Amendment, as interpreted by the United States Supreme Court in *Miranda* and *Edwards,* did not require the suppression of the challenged statements. Although the Court assumed without deciding that appellant had been "in custody" and was being interrogated at all relevant times during the April 29–May 6 period, it held that *Edwards* was inapposite. The Court reasoned that, while appellant asserted his right to counsel during interrogation on the Amherst County crimes, the challenged inculpatory statements concerned the Augusta County crimes for which he never requested the assistance of counsel. The Court also emphasized the fact that the challenged inculpatory statements were given to police officers from different jurisdictions who had no knowledge of appellant's initial request for counsel which he made to the officers investigating the Amherst County crimes. 225 Va. at 110, 300 S.E.2d at 927.

Appellant then filed a petition for a writ of habeas corpus in the Western District of Virginia. The district court denied the relief sought. It held that, pursuant to the rationale of *United States v. Skinner,* 667 F.2d 1306 (9th Cir.1982), *cert. denied,* 463 U.S. 1229 (1983), the breaks in custody vitiated the request for counsel made on April 29. Accordingly the rule of *Edwards* was held to be inapplicable. The court also deferred to the state courts' findings of voluntariness. This appeal followed.

For the reasons set forth below, we affirm the judgment of the district court dismissing the petition for a writ of habeas corpus.

## II.

### A.

The Supreme Court, in *Miranda, supra,* set forth the now familiar rule that, prior to custodial interrogation, an accused must be informed of his right to remain silent and his right to have an attorney present during questioning. Furthermore, if "the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Miranda, supra,* 384 U.S. at 474. The Court also stated that "if the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the Government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475.

Since *Miranda,* this restraint on police interrogation and the use of evidence obtained as a result of constitutionally defective waivers of *Miranda* rights repeatedly has been emphasized. In *Edwards, supra,* the Court further refined the boundaries of restraint:

"[A]lthough we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina v. Butler,* [441 U.S. 369 (1979) ], *supra,* at 372–376, the Court has strongly indicated that ad-

ditional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." (footnote omitted)

451 U.S. at 484. The standards by which we assess the application of this "rigid" prophylactic rule, *Fare v. Michael C.*, 442 U.S. 707, 719 (1979), were explicated in *Smith v. Illinois*, 469 U.S. 91 (1984):

"First, courts must determine whether the accused actually invoked his right to counsel. See, *e.g.*, *Edwards v. Arizona, supra*, at 484–485 (whether accused 'expressed his desire' for, or 'clearly asserted' his right to, the assistance of counsel); *Miranda v. Arizona*, 384 U.S. at 444–445 (whether accused 'indicate[d] in any manner and at any stage of the process that he wish[ed] to consult with an attorney before speaking'). Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked. *Edwards v. Arizona, supra*, at 485, 486, n. 9."

469 U.S. at 95.

■ Application of these standards to the facts of the instant case leaves us with the firm conviction that when appellant, after invoking his right to counsel during the initial questioning on April 29 concerning the Amherst County fires, was subjected to police-initiated reinterrogation, the *Edwards* rule was violated. It is beyond cavil that appellant unequivocally invoked his right to counsel. Inspector Morris immediately recognized this and, indicating to appellant that he could no longer speak with him, left the room. It is equally clear that appellant did not initiate any further discussions with the police. Deputy Brown entered the magistrate's office of his own volition, not in response to any actions by appellant, and began reinterrogation. Since "it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel", *Edwards, supra*, 451 U.S. at 485, we hold that the Fifth Amendment privilege against compelled self-incrimination was violated.

### B.

Our finding of an *Edwards* violation with respect to the Amherst County crimes, however, does not end our inquiry. This is due to the fact that his appeal to the Virginia Supreme Court was from a judgment of conviction, not of the Amherst County crimes, but rather, of the break-ins and arson of the Visitors' Center. Appellant concedes that the April 29 confession regarding the Amherst County crimes was not used in the instant case. He argues, however, that the *Edwards* violation so tainted his waivers of rights and consents to search with regard to the instant crimes, that his conviction of them must be set aside. He urges us to adopt the rule of imputation, recognized by other courts of appeals. Under that rule, once a suspect has invoked his right to counsel, knowledge of that request is imputed to all law enforcement officers who subsequently deal with the suspect. Upon the following analysis of the cases relied upon by appellant, we hold that his claim is without merit.

In *United States v. Obregon*, 748 F.2d 1371 (10th Cir.1984), the court held that knowledge that Obregon had invoked his right to counsel while in the custody of a member of the New Mexico Mounted Patrol must be imputed to a narcotics agent who subsequently interrogated him. Obregon had been stopped at a roadblock near the New Mexico border. The roadblock had been established to conduct routine drivers' license and car registration checks. An officer of the New Mexico Mounted Patrol, a division of the New Mexico State Police, approached the car being driven by Obregon. After determining that Obregon was driving a rented car with expired li-

cense plates and that Obregon's name was not on the car rental contract, the officer requested that Obregon park the car. Upon a search of the car, three bags of cocaine were discovered. The officer immediately placed Obregon under arrest and advised him of his *Miranda* rights. Obregon invoked his right to counsel, indicating further that he did not wish to speak. The officer then took Obregon to the New Mexico State Police office where they were joined by an agent from the Narcotics Division of the New Mexico State Police. The agent met with Obregon to obtain written confirmation that he had been warned of his *Miranda* rights. The agent read his rights to him again. Obregon then waived his right to counsel and confessed. The Ninth Circuit found that, although the agent had actual knowledge that the officer had advised Obregon of his *Miranda* rights, she did not have actual knowledge of his refusal to speak and the request for counsel. The court, however, imputed the knowledge of the officer to the agent. "Nevertheless, we must proceed on the predicate that [the agent] was fully aware of the fact that Obregon had stated that he did not want to make a statement and that he wanted a lawyer...." *Obregon, supra,* 748 F.2d at 1377. *See also United States v. Webb,* 755 F.2d 382 (5th Cir.1985).

In *United States v. Scalf,* 708 F.2d 1540 (10th Cir.1983), Scalf had invoked his right to counsel while in the custody of a member of the Oklahoma Highway Patrol. The court imputed that knowledge to an F.B.I. agent who later questioned him. The court held that "it makes no difference that the interrogation of Scalf was conducted by officers of a law enforcement agency other than the agency to whom he made his request for counsel." A federal bank had been robbed by Scalf. Shortly after receiving the radio transmission describing the getaway car and its occupants, officers of the Oklahoma Highway Patrol stopped Scalf's vehicle. He was placed under arrest and was given his *Miranda* warnings. Thereafter Scalf requested counsel. He was taken to the Oklahoma County Jail where, after booking, he was interviewed by an F.B.I. agent. Scalf signed a waiver

of rights and confessed to having committed the robbery. On appeal, Scalf contended that the *Edwards* rule governed the case and that his rights pursuant to it had been violated by the reinterrogation by the F.B.I. agent. The court agreed and ordered that Scalf be granted a new trial. "To rule otherwise would be to create a good faith exception to the exclusionary rule; this we decline to do, absent direction from the Supreme Court." *Id.* at 1545. *See also Offut v. State,* 56 Md.App. 147, 148, 467 A.2d 194, 195 (Md.App.1983) (*Edwards* rule applied "irrespective of whether the subsequent police questioning relates to a different offense than that for which the defendant was earlier arrested.").

In *United States v. Downing,* 665 F.2d 404 (1st Cir.1981), Downing was arrested by a Maine State Police Officer in connection with violations of the federal narcotics laws. After initially waiving his rights and responding to police questioning, Downing stated that he wished to see a lawyer before talking further. While in continuous custody Downing subsequently was interrogated by a federal customs agent. That agent failed to recite the full *Miranda* warnings or to ascertain whether Downing previously had requested counsel before additional interrogation. Downing made inculpatory statements which led to the discovery of tangible evidence. The First Circuit held that the evidence should not have been introduced in the government's case-in-chief, since it had been obtained as a result of violating Downing's right to have counsel present during interrogation. *Id.* at 409. The court warned that "law enforcement officers working in teams should be discouraged from violating the accused's constitutional rights by failing to ascertain or advise one another whether those rights had been previously asserted." *Id.* at 407. *See also United States v. Lilla,* 534 F.Supp. 1247, 1280 (N.D.N.Y.1982) (invocation of counsel while in custody of arresting officer "should have been communicated" to interrogating officer).

Appellant argues that this line of cases applies to the instant case because the police officers and investigators were work-

ing so closely together that they in fact were conducting a continuous and cooperative investigation. His counsel points out that an Amherst County deputy transported appellant to the magistrate's office to be interrogated by an investigator from the Division of Forestry; that a Nelson County deputy used an Amherst County consent form to obtain his consent to search his home; that officers from Nelson and Amherst counties, and an agent from the Division of Forestry, jointly conducted the search; that a Nelson County deputy interrogated him concerning crimes in Augusta County, over which the Nelson County deputy had no jurisdiction; and that evidence of crimes which had occurred in three different counties was stored at the Amherst County Sheriff's Office. As a result of this apparent cooperation, appellant invites us to impute to the officers from Nelson and Augusta counties knowledge that he had requested counsel while being interrogated by Investigator Morris of the Division of Forestry. He further invites us to set aside his convictions of the instant crimes because the confessions he made violated *Edwards*. We decline the invitation in all respects.

Our decision is a narrow one. We do not decide the circumstances under which an accused's request for counsel to one officer may be imputed to any other law enforcement officer who comes in subsequent contact with the accused, nor do we decide the consequences of such a situation. In the instant case, to decide those issues would be neither necessary nor appropriate.

█ The Supreme Court has recognized that, even where there had been an earlier coerced confession, "the time that passes between confessions, the change in place of interrogations, and the change in identity of the interrogators all bear on whether the initial coercion has carried over into the second confession." *Oregon v. Elstad*, 470 U.S. 298, 310 (1985). In *Westover v. United States*, 384 U.S. 494 (1966), decided the same day as *Miranda*, the Court recognized that law enforcement authorities are not necessarily precluded from questioning an individual who has been held for a peri-

od of time by other authorities who had violated the individual's rights. In *Westover* the accused had been held in continuous custody by the Kansas City police for fourteen hours and interrogated at length by them regarding two Kansas City robberies, without being advised of his constitutional rights. Agents of the F.B.I. began interrogating him regarding two California robberies immediately upon the conclusion of the interrogation by the Kansas City police. After two more hours of interrogation by the F.B.I., the accused confessed to the California robberies. The Court stated that, "although the two law enforcement authorities are legally distinct and the crimes for which they interrogated Westover were different, *the impact on him was that of continuous custody.*" *Westover, supra*, 384 U.S. at 496 (emphasis added). Since there was no evidence of any warning given prior to the F.B.I. interrogation nor was there any evidence of a waiver of rights after the F.B.I. commenced its interrogation, the Court reversed Westover's conviction. It recognized, however, that "a different case would be presented if an accused were taken into custody by the second authority, removed both in time and place from his original surroundings, and then adequately advised of his rights and given an opportunity to exercise them." *Id.* Although appellant was taken into custody by the Amherst County Sheriff's Department on both the evening of April 30 and the afternoon of May 1, the interrogation by the Nelson and Augusta deputies was removed in time and place from the magistrate's office where he originally had been questioned. The Nelson and Augusta deputies adequately advised appellant of his *Miranda* rights. He was interrogated by separate and distinct law enforcement authorities, about different crimes. *See, e.g., State v. Dampier*, 314 N.C. 292, 333 S.E.2d 230 (N.C.1985) (no violation of Fifth Amendment rights when defendant, in custody of Georgia authorities, interrogated by North Carolina authorities regarding different crimes); *State v. Cornethan*, 38 Wash.App. 231, 684 P.2d 1355 (Wash.App. 1984) (no violation of Fifth Amendment right to counsel because interrogating offi-

cers investigating different crime from that which defendant in custody for). Of even greater import, however, is that appellant was not subjected to continuous custody. There were two breaks in custody which serve amply to sever any causal link between the initial unlawful interrogation and appellant's voluntary confessions. *Cf. Clewis v. Texas*, 386 U.S. 707 (1967). *See also United States v. Skinner, supra*, (no *Edwards* violation because defendant not in continuous custody). *Accord, Gonzalez v. State*, 449 So.2d 882 (Fla.Dist.Ct.App.1984); *Brown v. State*, 661 P.2d 1024 (Wyo.1983).

We therefore hold that the initial violation of *Edwards* did not preclude further questioning of appellant regarding the instant crimes.

### C.

■ This brings us to our final inquiry. Since *Edwards* did not preclude further questioning on the 1980 break-in and the 1981 break-in and arson, we must decide whether appellant waived his Fifth Amendment rights when he confessed to those crimes. We answer in the affirmative.

Waivers of the right to counsel and the right to remain silent must be voluntary, knowing, and intelligent. *Johnson v. Zerbst*, 304 U.S. 458 (1938). A determination of waiver depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.* at 464. The Supreme Court "consistently has 'rejected any paternalistic rule protecting a defendant from his intelligent and voluntary decisions about his own criminal case.'" *Edwards, supra*, 451 U.S. at 490–491 (Powell, J., concurring) (quoting *Michigan v. Mosley*, 423 U.S. 96, 109 (1975) (White, J., concurring)).

When the Nelson County Deputy interrogated appellant on the morning of May 1, he properly gave the *Miranda* warnings to him. Appellant orally waived his rights at that time. Thereafter, he implicated himself in the April 1981 break-in and arson.

On May 6, the Augusta County Deputy interrogated appellant after properly giving him the *Miranda* warnings and after appellant waived his rights. Thereafter, appellant confessed to the April 1980 break-in at the Visitors' Center.

We hold that both of these confessions were voluntarily made. Appellant, a police officer familiar with *Miranda* and its implications, decided of his own volition to confess to crimes without the presence of counsel. This decision was made freely and not in response to any coercion on the part of either the Nelson County deputy or his Augusta County counterpart. Since the sole concern of the Fifth Amendment is governmental coercion, "the voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." *Colorado v. Connelly*, 107 S.Ct. 515, 523 (1986). The record before us is devoid of any suggestion that either deputy resorted to coercion of any sort. In the absence of any abuse that is the central concern of *Miranda* and its progeny, we hold that appellant may not be relieved of the consequences of his voluntary waivers of his *Miranda* rights.

### III.

To summarize:

We affirm the judgment of the district court dismissing appellant's petition for a writ of habeas corpus. We hold that the breaks in the stream of events, the change in place of the interrogations, the change of identity of the interrogators and the change of the subject matter of the interrogations all serve to vitiate the initial *Edwards* violation. We also hold that the confessions appellant made were not the result of police overreaching and were voluntary within the meaning of the Fifth Amendment.

AFFIRMED.