931 F.2d 55
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel DYE, Defendant-Appellant.
 No. 90-5058.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 11, 1991.
Decided April 23, 1991.
 
 Appeal from the United States District Court for the District of South Carolina, at Charleston. C. Weston Houck, District Judge. (CR-89-75)
 Timothy Clay Kulp, Edward Paul Gibson, Riesen Law Offices, North Charleston, S.C., for appellant.
 Robert C. Jendron, Jr., Assistant United States Attorney, Columbia, S.C. (Argued), for appellee; E. Bart Daniel, United States Attorney, Columbia, S.C., on brief.
 D.S.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and JOSEPH H. YOUNG, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 A jury convicted Daniel Dye of possession with the intent to distribute cocaine in violation of 21 U.S.C. Secs. 841(a)(1) & (b)(1)(C). Dye appeals his conviction claiming that (1) the district court admitted inculpatory statements (violating Miranda v. Arizona, 384 U.S. 436 (1966)), (2) the prosecution lost or destroyed exculpatory evidence, and (3) the district court should have struck certain testimony based on a violation of the Jencks Act, 18 U.S.C. Sec. 3500. We affirm the conviction.
 
 I.
 
 2
 Federal, state, and local law enforcement agents arrested Danny Hogg for possession of cocaine. During his interrogation, Hogg named Dye, a narcotics officer for the Berkley County Sheriff's Office, as his supplier and agreed to help[1] the police catch Dye selling drugs.[2]
 
 
 3
 Two days later, Hogg delivered drug money to Dye (for the first time as a Drug Enforcement Administration (DEA) informant) wearing a hidden tape-recorder. The police observed the meeting, but the body recorder failed to record the event; the police accidentally set the recorder in the "play" instead of the "record" mode. Hogg submitted a written account of the transaction, relating that he gave Dye $2,000 for drugs already delivered; Hogg customarily sold drugs for Dye on consignment.
 
 
 4
 Two days later, Dye delivered three ounces of cocaine to Hogg. Approximately one week later, the DEA and South Carolina Law Enforcement Division (SLED) each provided Hogg $1,000,[3] and Hogg again met with Dye wearing a hidden tape recorder and gave Dye the $2,000 for the three ounces of cocaine. The tape of the transaction revealed that Hogg stated to Dye "Some of this is tire money" and "... I ain't do nothing than a bunch of fives." Dye said that was all right but did not give Hogg more cocaine stating "I didn't get nothing today cause I ... it was buried at the golf course and we wasn't going there tonight."
 
 
 5
 Approximately one week later, DEA agents arrested Dye. An arresting DEA agent informed Dye that he had the right to remain silent, the right to have an attorney present prior to questioning, and that any answered questions could be used against him at trial. The agent did not state at the suppression hearing whether he advised Dye of his right to appointed counsel.[4]
 
 
 6
 The DEA agents then asked if Dye wished to cooperate, but Dye responded that he did not know what the officers were talking about. Without further conversation, the agents handcuffed Dye, placed him in the back of the police car, and drove to the courthouse. The car ride was either "funeral-dead" silent, according to two of the DEA agents, or there "could have been" a conversation about what happens to a cop when he goes to jail, according to the third. Toward the end of the ride, Dye asked: "What do I have to do to help myself?" Without reiterating the Miranda warnings, the agents asked Dye to name his source, and Dye incriminated himself.
 
 
 7
 Dye moved to suppress the incriminating statements based on a Miranda violation and moved to dismiss the charges based on prosecutorial misconduct, alleging that the government either lost or destroyed evidence. The district court conducted a hearing and denied both motions.
 
 II.
 
 8
 Dye claims the admission of the incriminating statements violated Miranda in three respects. First, Dye argues that the arresting DEA agents failed to advise him of his right to appointed counsel. Dye failed to raise this issue in the district court, and because fundamental fairness does not dictate otherwise, he is precluded from raising this issue on appeal. United States v. Mebane, 839 F.2d 230, 232 (4th Cir.1988).
 
 
 9
 Second, Dye argues that the DEA agents reinitiated their interrogation after Dye invoked his right to remain silent; Dye characterizes this issue as one under Rhode Island v. Innis, 446 U.S. 291 (1980). However, the district court held that after the arresting agents informed Dye of his Miranda rights, Dye failed to invoke them, choosing not to remain silent. Therefore, the issue is whether Dye's comment "I don't know what you are talking about" should have ended the interrogation, not whether the agents discussed what happens to an incarcerated police officer during the ride to the courthouse, and in turn, if such comments were reasonably likely to elicit an incriminating response. See Innis, 466 U.S. at 303.
 
 
 10
 Generally, law enforcement officers must immediately cease custodial interrogation when a suspect requests the assistance of counsel, Escobedo v. Illinois, 378 U.S. 478 (1964), and at least temporarily cease interrogation if the suspect indicates a desire to remain silent. Michigan v. Mosley, 423 U.S. 96 (1975). Here, Dye neither requested counsel nor remained silent. Consequently, the finding that the officers did not have to cease the interrogation or reissue the Miranda warnings once Dye started to incriminate himself is not clearly erroneous. United States v. Gordon, 895 F.2d 932, 938 (4th Cir.), cert. denied, 59 U.S.L.W. 3247 (U.S.1990); see United States v. Smith, 452 F.2d 638 (4th Cir.1971), cert. denied, 406 U.S. 910 (1972).
 
 
 11
 Third, Dye argues that the district court did not provide a factual basis for the finding that he knowingly and voluntarily waived his Miranda rights. In deciding whether there has been a valid waiver of the right to counsel, courts should consider the background, experience, and conduct of the defendant. United States v. Young, 529 F.2d 193, 195 (4th Cir.1975). A district court may consider a defendant's experience as a police officer. McFadden v. Garraghty, 820 F.2d 654 (4th Cir.1987).
 
 
 12
 The district court ruled from the bench that the evidence presented at the pretrial hearing showed that Dye knowingly and voluntarily waived his rights:
 
 
 13
 It seems clear to me that Mr. Dye, before he made any such statements, was given his Miranda warnings.... I believe that the clear inference is that he understood what his rights were. I think any of us would have understood what our rights were, but I think even more so in the case of someone in his position, an experienced police officer, must have known what his rights were. All of the evidence indicates that in spite of his knowledge of his rights to remain silent and to have an attorney, he chose not to remain silent, and he did not ask to have an attorney. I think he waived his rights. I think he did so voluntarily, knowingly, and with a full understanding and awareness of the nature of the rights being abandoned and the consequences of his abandonment of the same.
 
 
 14
 The factual basis presented at the pretrial hearing in support of the motion to suppress clearly established that Dye--a police officer who stated that he understood his rights--knowingly and voluntarily waived his fifth amendment rights. Young, supra; McFadden, supra.
 
 III.
 
 15
 Dye alleges prosecutorial misconduct, claiming that the government lost the tape of Hogg's initial interview, lost or failed to make a tape of the first monitored money transfer between Hogg and Dye, and failed to produce a tape of a debriefing session with Hogg. To show prosecutorial misconduct, Dye must show bad faith. Arizona v. Youngblood, 488 U.S. 51 (1988).
 
 
 16
 Dye argues axiomatically that experienced government agents do not innocently lose or destroy evidence, and since the agents claim they lost or destroyed evidence, logic dictates the presence of bad faith. However, although the loss of evidence was a curious incident, there is no indication that the police lost the evidence in bad faith.
 
 
 17
 Even if the first tape, the recording of the conversation where Hogg initially named Dye as his supplier and agreed to work for the DEA, was lost in bad faith, an inference not reflected by the record, Dye must show that the evidence was unobtainable by other means. California v. Trombetta, 467 U.S. 479 (1984). Hogg testified under cross-examination that he initially named a dead person as his supplier before naming Dye. As this inconsistency is the only material on the tape Dye wished to cross-examine Hogg about, Dye cannot show prejudice or that this evidence was not otherwise available. Id.
 
 
 18
 Dye also claims the DEA photocopied half the $2,000 that Hogg gave to Dye but lost the photocopies prior to trial. Again, the speculation of bad faith--without more--is insufficient to require a dismissal based on prosecutorial misconduct. Youngblood, supra.
 
 IV.
 
 19
 Dye claims that the district court should have struck Hogg's testimony because the government failed to comply with the Jencks Act. Although it is difficult to determine the value of a withheld Jencks Act statement, prejudice must result from an omission to warrant reversal. United States v. Missler, 414 F.2d 1293, 1303 (4th Cir.1969), cert. denied, 396 U.S. 913 (1970).
 
 
 20
 Counsel for Dye requested the tape of the initial interview between Hogg and Dye (in accord with the Jencks Act) to impeach Hogg on the basis that he initially named someone other than Dye as his supplier. Although the tape of this interview was lost, Dye fully cross-examined Hogg on this point at trial. Dye cannot show prejudice. Id.
 
 
 21
 We affirm the conviction.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Ironically, Hogg was originally Dye's informant for the Berkley County Sheriff's Office
 
 
 [2]
 The police recorded this interview, but the recording was lost in Hurricane Hugo or during an office move
 
 
 [3]
 The DEA money was in denominations of fives, tens, and twenties, and the SLED money was in denominations of twenties, fifties, and hundreds
 
 
 [4]
 The agent testified at trial that he informed Dye of his right to appointed counsel prior to questioning