## CIRCUIT COURT OF DINWIDDIE COUNTY

Commonwealth of Virginia

v.

Joseph Earl Walton, Jr.

December 18, 2015

Case No. CR15-25

By Judge Joseph M. Teefey, Jr.

This day came the defendant, in person and by counsel, Wade A. Kizer, and the Commonwealth, by the Attorney for the Commonwealth, Ann Cabell Baskervill, on the defendant's motion to suppress evidence. The Court received evidence *ore tenus,* exhibits, two transcripts of recorded police questioning of the defendant, written and oral argument of counsel, and applicable case law and statutes cited by the parties and researched by the Court.

### Facts Presented

The defendant was married to Nancy Walton and resided with her in Dinwiddie County, Virginia. Ms. Walton was hospitalized in January 2015 for injuries she sustained that were investigated by the Dinwiddie Sheriff's Office. On January 9, 2015, Deputy Goodwin of the Dinwiddie Sheriff's Office placed the defendant in custody on a temporary detention Order, a preprinted form provided by the Court, which reads in relevant part, "you are commanded to execute this order, take the [defendant] into custody and transport the [defendant] from [his] current location to Southside Regional

Medical Center." The Order was issued by a magistrate for Dinwiddie County pursuant to Va. Code § 37.2-809 for psychiatric treatment. (Exhibit 3.)

Deputy Goodwin, a uniformed deputy with displayed badge, served the temporary custody Order on the defendant, handcuffed the defendant, and transported the defendant from Dinwiddie County to the Southside Regional Hospital in Petersburg, Virginia, where he was taken to the emergency room for treatment related to his physical condition before admission to the psychiatric unit of the same hospital. Since the defendant was still in the custody of the deputy until delivered to the secure psychiatric unit pursuant to the detention order, Deputy Goodwin testified that he remained in the emergency room while the defendant received medical treatment.

Deputy Goodwin further testified that the defendant was disruptive while receiving treatment, so the defendant was restrained and may have been handcuffed to the bed. The deputy remained inside the room or in the doorway throughout the morning to "guard him" and "to make sure he did not try to escape." The deputy remained on guard, including the time period when an investigator arrived to question the defendant. The Dinwiddie Sheriff's Office assigned Investigator Kenneth Droddy to question the defendant regarding the injuries sustained by Ms. Walton requiring her to be hospitalized. Investigator Droddy arrived at Southside Regional Hospital after the defendant received medical treatment and was in the emergency room of the hospital.

Upon arrival, Droddy identified himself as an investigator for the Dinwiddie County Sheriff's Office and informed the defendant that he wanted to ask him questions regarding Ms. Walton. Droddy closed the hospital room door, telling the defendant that the television outside the room was loud and he wanted privacy to talk with the defendant. Droddy conceded during testimony that he did not inform the defendant of his constitutional rights pursuant to the *Miranda v. Arizona* decision before he began to question the defendant.

The defendant, within a few minutes into the questioning, stated, "I'm not going to answer no more questions." Droddy questioned, "why ain't you?" The defendant answered, "I want to talk to a lawyer." Droddy, thereafter, began to inquire about the defendant's request to "talk to a lawyer." (Transcript January 9, 2015, page 11.) Droddy continued the interview, and the defendant made further statements to the investigator regarding the events leading up to Ms. Walton's hospitalization.

The psychiatric unit staff released the defendant on January 12, 2015, from the secure unit since the temporary detention order expired three days after issuance. Investigator Shifflett of the Dinwiddie County Sheriff's Office knew of the planned release date and time, so he traveled to Southside Regional Hospital to arrest the defendant on two criminal warrants issued by the Dinwiddie County Magistrate for domestic assault and battery and

aggravated malicious wounding of Ms. Walton. (The Court did not receive a challenge from the defendant to the officer's execution of an arrest warrant in the City of Petersburg, which is beyond the jurisdiction of Investigator Shifflett, a sworn officer of Dinwiddie County.) Investigator Shifflett transported the defendant in custody to the Dinwiddie County Sheriff's Office where Shifflett questioned the defendant regarding the charges served upon him. Shifflett advised the defendant of his Constitutional rights pursuant to the *Miranda* decision prior to questioning. The defendant answered questions and provided statements to the investigator.

### Issues in Controversy

1. Whether police conducted a custodial interrogation of the defendant on January 9, 2015, without first informing him of his constitutional right to remain silent and to have counsel present during questioning.

2. Whether the defendant made an unequivocal invocation of his right to remain silent and right to have counsel present before answering police questions.

3. Whether police re-initiated the custodial interrogation of the defendant on January 12, 2015, after the defendant invoked his right to have counsel present.

The Court received additional challenges to the admissibility of defendant's statements including: (a) whether the defendant was under the influence of drugs sufficient to render the January 9, 2015, statements involuntary and inadmissible; (b) whether police illegally continued questioning the defendant after he asserted his right to remain silent on January 9, 2015; (c) whether the police illegally continued questioning the defendant after he asserted his right to counsel on January 9, 2015; and (d) whether police assurances to the defendant that statements would not be harmful to him rendered defendant's statements to police on January 12, 2015, involuntary and thereby inadmissible. The Court does not decide these issues since the Court's decisions regarding the listed issues in controversy included in this Order are dispositive.

### Standard of Review

The Commonwealth bears the burden of proof for the admission of propounded statements made by the defendant to the police. The Commonwealth must show by a fair preponderance of the evidence that the proffered confession was voluntarily made by the defendant to the police. *Lego v. Twomey,* 404 U.S. 477 (1972). Voluntariness depends upon demonstrating that the defendant abandoned his rights both knowingly and intelligently. *Watkins v. Commonwealth,* 229 Va. 469 (1985). This Court must review the totality of the circumstances surrounding the questioning and statements made by the defendant to the police to determine whether

the Commonwealth has met the burden for the admissibility of the proffered evidence. *Rodriguez v. Commonwealth,* 40 Va. App. 144 (2003); *Cary v. Commonwealth,* 40 Va. App. 480 (2003). When the Commonwealth fails in her burden of proof, this Court must exclude evidence obtained in violation of the defendant's constitutional rights, as announced in *Miranda,* so that the illegally obtained statements work no further harm to the defendant. *United States v. Blue,* 384 U.S. 251 (1916); *Miranda v. Arizona,* 384 U.S. 436 (1966); *Owens v. Commonwealth,* 218 Va. 69 (1977); *Wass v. Commonwealth,* 5 Va. App. 27 (1987).

## *Analysis*

This Court must examine the events of January 9, 2015, to determine the threshold issue of whether the defendant was in custody while questioned by Droddy. The defendant was served with the temporary detention order by Deputy Goodwin which order informed the defendant that the deputy was commanded by the magistrate who issued said order to take the defendant into "custody." While custody contemplated by the order and Va. Code § 37.2-809 is civil custody, the classification as criminal or civil is not disclosed to the respondent in the language of the order. In fact, the duration of the temporary detention order is not explicit; instead, the reader is referred to Va. Code § 37.2-809 to determine the statutory prescribed duration of the respondent's custody.

Officer Goodwin testified that he placed the defendant in handcuffs and transported him in his police vehicle. This police action of handcuffing a suspect in a public place has been held to constitute custody without more. *New York v. Quarles,* 467 U.S. 649 (1984). While inside the hospital, Deputy Goodwin guarded the defendant to prevent escape and only left the treatment room to stand in the doorway. Additionally, Deputy Goodwin restrained the defendant for disruptive behavior while being treated. This restraint may have included placing handcuffs on the defendant and attaching them to the hospital bed while Droddy questioned the defendant. Droddy arrived, bringing the total officers present during questioning to two. Droddy closed the treatment room door, identified himself as a police investigator, and questioned the defendant while he was restrained in bed.

Custody is defined as a formal arrest or restraint on freedom of movement associated with a formal arrest. *California v. Beheler,* 463 U.S. 1121 (1983). The physical location where questioning is conducted is of secondary concern to the custodial nature which triggers the necessity to provide *Miranda* warnings. *Coleman v. Commonwealth,* 226 Va. 31 (1983); *Pruett v. Commonwealth,* 232 Va. 266 (1986). The defendant was in custody on a civil detention order when questioned. The defendant was twice physically restrained during this custody, each time limiting his movement and preventing his ability to walk away or leave the location where police were questioning him. Two police officers were present during questioning, and

they closed the treatment room door before starting the questions. Droddy questioned the defendant about his wife's injuries requiring hospitalization and never asked questions about other possible suspects indicating that the defendant was the focus of his investigation. The Court finds that these circumstances objectively establish that the defendant was in custody on a civil detention order and not at liberty to leave the officers. The Court further finds that the total circumstances surrounding the January 9, 2015, questioning objectively indicate that police so completely limited the defendant's physical ability to leave the questioning that the restraint on freedom of movement was consistent with the level of force applied to subdue a suspect under formal arrest.

The Court must next turn to whether Droddy's questions constituted interrogation. The standard for interrogation announced in *Timbers v. Commonwealth,* 28 Va. App. 187 (1998), is whether an objective observer would view the officer's words or actions as designed to elicit an incriminating response. Droddy told the defendant he wanted to find out what put Ms. Walton in the hospital. He more specifically questioned the defendant about whether he and his wife argued or had fights. He continued this line of questions by providing medical information specific to Ms. Walton that she had a head injury and asked how she received a head injury. These directed questions from police coupled with the officer's actions to restrain the defendant objectively reveal that the questioning was intended to produce incriminating responses thereby constituting an interrogation.

Since compulsion is inherent in custodial settings, police interrogation of a suspect must be conducted only after the suspect is provided full warning of his constitutional rights. See, *Miranda.* Droddy conceded that he did not provide the defendant with these warnings, which are special safeguards prescribed in the *Miranda* decision when *incommunicado* interrogation of an individual takes place in a police dominated atmosphere, as the defendant faced on January 9, 2015. The Court must, therefore, apply the remedial relief requested by the defendant and·exclude from evidence at trial the defendant's statement made to Droddy on January 9, 2015.

The police failure to provide *Miranda* warnings to the defendant on January 9, 2015, did not render the defendant unable to assert his right to remain silent. The defendant stated to Droddy, "I'm not going to answer no more questions." The officer was compelled to end his questioning after receiving this unequivocal invocation of a constitutional right to remain silent. Nevertheless, Droddy questioned, "why ain't you?" The defendant answered, "I want to talk to a lawyer." Droddy, thereafter, began to inquire about the defendant's request to "talk to a lawyer."

The test applied when a suspect asserts his right to counsel is an objective test. *Davis v. United States,* 512 U.S. 452 (1994). This Court must determine whether a reasonable police officer questioning the defendant would understand this statement as a request for an attorney. *Id.* There can

be no confusion from the language used by the defendant in the present case that he was invoking his right to counsel. There is no word included in his statement that can be found ambiguous. The defendant is only required to assert his right to counsel once when it is made unequivocally. *Commonwealth v. Ferguson*, 278 Va. 118 (2009). With this objective finding that the defendant invoked his right to counsel, police questioning must cease. *Edwards v. Arizona*, 451 U.S. 477 (1981). This provides a secondary reason that this Court orders the exclusion of defendant's statements to police on January 9, 2015.

The standard of proof for admissibility rests on the Commonwealth to introduce statements made by the defendant to Investigator Shifflett on January 12, 2015. *Oregon v. Bradshaw*, 462 U.S. 1039 (1983); *Wyrick v. Fields*, 459 U.S. 42 (1982). The Court received no evidence that the defendant requested that police talk with him or re-initiated discussions with police after invoking his right to counsel. In fact, the contrary was developed during the evidence received at the hearing on defendant's suppression motion.

Shifflett arrested the defendant on felony and misdemeanor warrants upon his release from the psychiatric unit of Southside Hospital and the expiration of the detention order. Shifflett transported the defendant in custody to the interview room of the Dinwiddie Sheriff's Office. At that secure location, Shifflett resumed the custodial interrogation started by Droddy. Shifflett did provide *Miranda* warnings to the defendant, but the defendant was not afforded his right to counsel that he previously invoked to Droddy. These investigators were investigating the same offenses, focused on the same suspect, and the investigators worked for the same police agency. It is irrelevant whether Shifflett knew of the defendant's invocation of his right to counsel while questioned by Droddy. *Arizona v. Robertson*, 486 U.S. 675 (1988). The police are prohibited from initiating contact and questioning the defendant after invocation of his right to counsel pursuant to the decision in *Edwards v. Arizona. See also, King v. Commonwealth*, 243 Va. 353 (1992).

The Court finds that the Commonwealth failed in her burden of proof to establish that the defendant knowingly and voluntarily waived his right to counsel that he previously invoked to police. The Court further finds that the Commonwealth failed to establish that the defendant was afforded his right to counsel and, thereafter, waived this right before answering Shifflett's questions on January 12, 2015. With these findings of fact and law, the Court must exclude from evidence at trial any and all statements made by the defendant to Investigator Shifflett on January 12, 2015.

## Conclusion

The Court, for the aforementioned reasons, hereby orders that the defendant's motion to suppress is granted and that the Commonwealth is prohibited from introducing the defendant's statements at trial that were made to police on January 9, 2015, and January 12, 2015.